[Civ. No. 1612.   Third Appellate District.—June 2, 1917.]

## NORTHERN REDWOOD LUMBER COMPANY (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION OF THE STATE OF CALIFORNIA, Respondent; OLIVER B. HARVEY, Applicant.

Workmen's Compensation Act—Death of Employee—Basis of Computation.—Under the Workmen's Compensation Act, in computing the death benefit to which a person dependent for support upon a deceased employee is entitled, where the wage or salary of the deceased employee working in the class referred to by subdivision 2 of section 17 (a) has not been definitely agreed to and fixed, the wage or salary of an employee of the same class, who had worked at the same or similar kind of employment substantially the whole of the year immediately preceding the death of the employee, earned during the days when so employed, should be adopted as the basis of computation; but where the employee's salary or wage for employment of a certain class is definitely fixed, such wage is the basis of computation.

Id—Burial Expenses—Allowance Against Employer.—Under section 15 (c) (2) and section 15 (c) (3) of the Workmen's Compensation Act, as amended in 1915, in cases of partial dependency the cost of burial may be allowed in addition to the death benefit awarded, while in cases of total dependency such costs may not be allowed in addition to the death benefit.

Id.—Discrimination in Cases of Partial and Total Dependency—Provision not Invalid.—The discrimination in permitting an allowance for burial expenses in the cases of partial dependency and its disallowance in the cases of total dependency does not render

such provisions of the act invalid, as such discrimination is one which the legislature has the power and the right to recognize and establish.

APPLICATION for a Writ of Review originally made to the District Court of Appeal for the Third Appellate District to annul an award made by the Industrial Accident Commission.

The facts are stated in the opinion of the court.

Gavin McNab, and Oliver B. Wyman, for Petitioner.

Christopher M. Bradley, for Respondent.

HART, J.—Writ of review. The applicant, Oliver B. Harvey, was the father of Harry Clifford Harvey, who, on May 19, 1916, was drowned in a mill-pond, being at the time in the employ of petitioner, Northern Redwood Lumber Company. The award of the Industrial Accident Commission was in favor of the applicant and against petitioner in the sum of $540.

Petitioner urges two points against the correctness of the award: 1. The evidence does not sustain findings 6 and 7, made by the commission; and, 2. Error was committed by the commission in refusing to allow petitioner credit for one hundred dollars expended by it on account of the burial expenses of the employee.

Finding No. 6 is as follows: "That at the time of said injury the actual wages of the said employee were $2.75 per day, working six days per week, and that therefore his average annual earnings were $825, that the average weekly earnings were $15.87, and that sixty-five per cent thereof equals $10.31."

Finding No. 7 is as follows: "That Oliver B. Harvey, the applicant herein, is the father of said deceased employee, and at the time of his death was partially dependent upon him for support; that the annual amount devoted by the deceased to the support of applicant was the sum of $180, being approximately twenty-one and four-fifths per cent of the average annual earnings of said employee, and that such percentage of three times said average annual earnings equals the sum of $540; that therefore applicant is entitled to a death benefit in

the total sum of $540, payable by defendant in weekly installments of $10.31 each, and that the amount of such installments now accrued and payable for the period of fourteen weeks from the date of death up to and including the twenty-fifth day of August, 1916, equals the sum of $144.34.''

Petitioner claims that there should have been a finding that deceased ''was employed for not to exceed 225 days at $2.75 per day, which would give his annual average earnings at the sum of $618.25,'' instead of the finding that $825 was the amount thereof; and petitioner further states: ''The commission arbitrarily took $2.75 and multiplied by three hundred, as though the case were one falling under section 17 (a) (1) of the statute.''

To sustain its position in this respect, petitioner quotes the following testimony given by the applicant, Oliver B. Harvey: ''Q. How many months during the year do you work or did you work for Northern Redwood Lumber Company? A. Eight or nine. Q. He [meaning Harry Clifford Harvey] worked the same season as you did during the year? A. Well, yes, about the same. Q. Eight or nine months? A. Yes, sir.''

Respondent replies to the above contention: The average annual earnings of the employee were fixed by the commission ''not under the provisions of section 17 (a) (1) of the statute, but under the provisions of section 17 (a) (2) of the statute, and there is ample evidential support for the computation under the latter subsection.''

The two sections of the Workmen's Compensation Act above mentioned read as follows:

''Sec. 17.   (a) The average weekly earnings referred to in section fifteen hereof shall be one fifty-second of the average annual earnings of the employee; in computing such earnings his average annual earnings shall be taken at not less than three hundred and thirty-three dollars and thirty-three cents, nor at more than one thousand six hundred and sixty-six dollars and sixty-six cents and between said limits shall be arrived at as follows:

''(1) If the injured employee has worked in the same employment, whether for the same employer or not, during substantially the whole of the year immediately preceding his injury, his average annual earnings shall consist of three hundred times the average daily earnings, wage or salary which he earned as such employee during the days when so employed.

"(2) If the injured employee has not so worked in such employment during substantially the whole of such immediately preceding year, his average annual earnings shall consist of three hundred times the average daily earnings, wage or salary which an employee of the same class, working substantially the whole of such immediately preceding year, in the same or a similar kind of employment, in the same or a neighboring place, earned during the days when so employed." . (Stats. 1915, pp. 1086, 1087.)

1. As to the proposition first above stated, it is clear that the basis of computation adopted by the commission, as evidenced by its findings, is that authorized by section 17 (a) (2) of the Workmen's Compensation Act, above quoted herein; and that there is evidential support for said computation and finding may be shown by the following testimony given by the witness, L. Everding, secretary of the petitioner: "He had worked in the Riverside mill and was employed by the year around. Q. When did Harry Harvey commence work for the company? A. He worked a short time in March, 1914, and then again re-entered our employ in November, 1915. He worked for us in November, December, January, February, March, and April. Q. Up to the time of his death? A. Yes, sir. Q. Now, he got how much per day working for you? A. Two dollars and seventy-five cents working as rigging puller on the pond. Just previous to that he had been working in the mill. Q. At the time of his death Harry Harvey was working at day's labor under the classification of rigging puller? A. Well, yes; you will see by his card what his wages were and in what position he was working. Q. What is the average season of employment as rigging puller? A. The average season of employment in the woods consists of about eight months. Q. That is the longest period of time you operate the woods, but you operate the mill a longer period? A. Yes, sir."

Corroborative of said testimony as to the classification or character of the employment to which the deceased was assigned is the "card" referred to by Everding. This card was, we assume, a printed form, and was used by the petitioner in contracts for the hiring of employees, being perhaps a form or method prescribed by the rules of the commission for the purpose of indicating the character of the employment in which

the employee was hired to engage and of showing the wage he was to receive therefor. The entitlement of said card is: "Application for Employment." It was signed by the deceased employee and showed, among other facts, the following: "Name, Harry Harvey. Occupation, Rigg. puller. Wages per day, $2.75. Age 24. Are you married? A. No. Number of persons depending on you? A. None."

Thus it is very clear that the commission was warranted in finding these pertinent facts: That the deceased was employed as a rigging puller, at a compensation of $2.75 per day; that his employment was not "seasonal" or, to be more explicit, for a portion of the year only, but was for "all the year around"; that, when he lost his life, he had not worked in said employment during substantially the whole of the year immediately preceding his death, and that he lost his life while actually engaged in that employment. Under these facts, as found by the commission, it is manifest that, as before stated, the computation was made in accordance with the terms of subdivision (2) (a) of section 17 of the act. Indeed, we cannot perceive how it otherwise could justly be made under the evidence, since, as seen, the deceased was employed to perform services which the petitioner's business required to be performed during the entire year, and since, furthermore, the deceased had not "worked in such employment during substantially the whole of" the year immediately preceding the date of his death. In such case, as shown, the commission is authorized, as it has done in this case, to make an award based upon a computation whereby the actual daily wage shown by the evidence to have been paid the deceased as an employee in the class to which he belonged was multiplied by three hundred, or approximately, if not actually, the number of working days in a year. But it appears to be seriously contended by the petitioner that the fact that the computation was so made conclusively shows that the commission did not in this case intend to apply the second subdivision (a) of section 17, inasmuch (so it is declared) as there is no testimony showing that "the average daily earnings, wage or salary which an employee of the same class, working substantially the whole of such immediately preceding year, in the same or similar kind of employment, in the same or a neighboring place, earned during the days when so employed." The argument, stating it in counsel's own language, is: "To

apply section 17 (a) (2), the record must disclose evidence showing the earnings of an employee of the same class, who *did* work substantially throughout the whole of the year immediately preceding the injury.'' We are not able to accept this construction of said subdivision of the section. What the language of said subdivision was evidently intended to say was that, where the wage or salary of the deceased employee working in the class referred to by said subdivision of the section had not been definitely agreed to and fixed, the wage or salary of an employee of the same class, who had worked at the same or similar kind of employment substantially the whole of the year immediately preceding the death of the employee, earned during the days when so employed, should be adopted as the basis of the computation. But where, as in this case, the employee's salary or wage for employment of a certain class is definitely fixed, there is obviously no necessity for any further testimony upon that element of the computation than that of the salary or wage so fixed.

2. As to the alleged error of the commission in not allowing a credit of one hundred dollars expended for funeral expenses, appellant quotes section 15 (c) (3) of said statute, as follows: ''If the deceased employee leaves no person dependent upon him for support, the death benefit shall consist of the reasonable expenses of his burial, not exceeding one hundred dollars, and such further death benefit as may be provided by law.'' (Stats. 1915, p. 1085.)

Petitioner then quotes section 15 (c) (2), upon which it bases its contention, as follows: ''In case the deceased employee leaves no person wholly dependent upon him for support, but one or more persons partially dependent therefor, the death benefit shall be such percentage of three· times such average annual earnings of the employee as the annual amount devoted by the deceased to the support of the person or persons so partially dependent bears to such average annual earnings; *provided,* that the death benefit shall not be greater than a sum sufficient, when added to the disability indemnity, which, at the time of the death, has accrued and become payable under the provisions of subsection (*b*) hereof, *together with the reasonable cost of the burial of such deceased employee, not exceeding one hundred dollars,* to make the total disability indemnity, *cost of burial* and death benefit equal to three times his average annual earnings, such average annual

earnings to be taken at not less than three hundred and thirty-three dollars and thirty-three cents nor more than one thousand six hundred and sixty-six dollars and sixty-six cents.'' (Stats. 1915, p. 1084.)

As seen, the record shows that petitioner and some of the members of his family were ''partially dependent'' upon the employee for support. Petitioner does not controvert this fact, but states that it paid the cost of burial ''upon the belief and understanding that said employee left no one dependent upon him,'' as stated in the application card above quoted.

The solution of this proposition hinges on the true meaning and intent of the statute in that particular, and thus a construction of the above section is necessary.

It may first be observed that whether the petitioner paid the burial expenses under a misapprehension—that is, under ''the belief and understanding that said employee left no one dependent upon him''—is a matter which, obviously, cannot justly influence in any measure the determination of the question whether the law, as applied to the facts as found in this case, imposes that burden upon an employer. Of course, it must be conceded that upon the question whether there was anyone dependent upon the deceased within the contemplation of the act, there is a direct and positive variance between the oral testimony and the application card; but the latter is not conclusive upon that question. It constituted nothing more than mere evidentiary matter, whose probative value upon the question of dependency was entirely with the commission to determine, and the determination by the commission, upon what appears to us to be sufficient testimony, that there were certain persons partially dependent for support upon the deceased is conclusive upon this court.

Taking up now the question whether funeral expenses, in addition to the death benefit, are among the items which may legally be allowed as against the employer, it is first to be remarked that, while the language of the law (section 15 of the act, as amended by the legislature of 1915, Stats. 1915, pp. 1084, 1085), is not as clear upon this proposition as it might have been made, yet we cannot see how any other construction can reasonably be given that portion of said section relating to funeral expenses than that which is given to it here by counsel for the respondent, viz.: That, in cases of partial dependency, the cost of burial may be allowed in addi-

tion to the death benefit awarded, while in cases of total dependency, such cost may not be allowed in addition to the death benefit.

Two of the subdivisions of section 15 refer to and provide for funeral expenses. The first reads as follows:

"(1) In case the deceased employee leaves a person or persons wholly dependent upon him for support, the death benefit shall be a sum sufficient, when added to the disability indemnity. which, at the time of death, has accrued and become payable, under the provisions of subsection (*b*) hereof, *including the reasonable expense of his burial, not exceeding one hundred dollars,* to make the total disability indemnity, *cost of burial* and death benefit equal to three times his average annual earnings, such annual earnings to be taken at not less than three hundred and thirty-three dollars and thirty-three cents nor more than one thousand six hundred and sixty-six dollars and sixty-six cents."

The second subdivision referring to funeral expenses is (c) (2), above quoted.

It is very clear that the intention of the legislature, as expressed in the above-quoted subdivisions of section 15, was that, in the case of total dependency, funeral expenses are not to be paid in addition to the death benefit allowable under subdivision (*b*) of said section 15, while in the case of partial dependency, in addition to the death benefit allowable under said subsection, funeral expenses, or the reasonable cost of the burial of such deceased employee, may legally be imposed upon the employer. Indeed, as must become plainly manifest from the reading of the two subdivisions, that intention is with sufficient clearness expressed in the language itself of said subdivisions. The language of the one cannot reasonably be so viewed or construed as to give to it any other meaning than that the expenses of burial, not to exceed the sum of one hundred dollars, shall be reckoned as a part of the death benefit itself. On the other hand, the language of the second subdivision, "*together with* the reasonable cost of the burial," etc., means, grammatically, "in addition to"; or, paraphrasing that particular sentence in the second subdivision, the language plainly means: "Besides the amount of the death benefit awarded, the reasonable cost of the burial of the deceased employee, not to exceed one hundred dollars, shall be paid." This, we say, is the meaning of the language as gram-

matically construed, and we can conceive of no reason for holding that to said language a meaning at variance with that necessarily following from its construction according to the rules of grammar should be ascribed.

It is obviously not for us to inquire why the legislature discriminated as to funeral expenses between the two classes of cases dealt with, respectively, by the first and second subdivisions of section 15. It is enough to know, as is clearly true, that the distinction or discrimination thus made is one which the legislature has the power and the right to recognize and establish. Presumptively there was, in the legislative mind, a sufficient reason for the discrimination, albeit such reason may not be manifest upon the face of the statute itself. But, as suggested, whether there exists a substantial reason for the distinction or whether the same was arbitrarily drawn, the power to make it is nevertheless in the legislature. In other words, the fact of the discrimination does not render the provisions invalid, nor does the absence of an obviously substantial reason therefor compel, as is true in some cases, a construction of the provisions contrary to the plain grammatical signification of the language thereof.

Our conclusion is that the award should be affirmed and the writ denied, and it is so ordered.

Chipman, P. J., and Burnett, J., concurred.