STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. FRANK SAGE, PLAINTIFF IN ERROR.

Argued September 13, 1923—Decided November 19, 1923.

1. In addition to the existence of error in law, in a criminal case, it must be shown that such error was, or might have been, prejudicial to the defense on the merits to constitute a ground for reversal of the judgment.
2. The condition existing at a place where a homicide was committed is always subject of proof. Articles taken at such a place, such as a blackjack, guns and the like, are admissible in evidence.
3. It was not error in this case for the court to permit the state to abandon the count in the indictment for manslaughter, and not to charge the jury on that particular crime.

4. "At any moment before or at the time the shots were fired," in a charge in a homicide case is not error when read in connection with the entire charge. It is not permitted to extract a single sentence and construe it without regard to the context in which it appears.

5. It was not error to charge that it was incumbent on the defendant to adduce evidence of facts and circumstances from which justification, excuse or extenuation may arise, under a plea of self-defense.

6. In this case the police officers had reasonable cause to suspect the defendant guilty of a crime and they were justified in attempting to make an arrest without a warrant.

On error to the Hudson County Court of Oyer and Terminer.

For the plaintiff in error, *Richard Doherty.*

For the defendant in error, *John Milton,* prosecutor of the pleas, and *George T. Vickers.*

The opinion of the court was delivered by

BLACK, J. Frank Sage, the plaintiff in error, was convicted of murder in the first degree, without recommendation for life sentence by the jury, for killing John J. Black, a police sergeant of Jersey City.

The facts leading up to and surrounding the killing of Black by Sage, the plaintiff in error, as disclosed by the record, are thus summarized. On November 18th, 1921, Sage was sentenced on a plea of *non vult,* to an indictment for entering and larceny, to the state prison by the Passaic Quarter Sessions. On July 7th, 1922, he with other prisoners were sent to help the prison driver in the performance of some duty. He eluded the latter while so engaged and did not return to the prison. On May 22d, 1923, he was living at No. 19 Manhattan avenue, Jesrey City, with a woman, not his wife, by the name of May Miller. The prison authorities, as is the custom, sent out to all police departments what is called a fugitive's card, showing the photograph of Sage, his description, the facts of his escape,

the crime for which committed, and notice that a reward for his capture is offered. At this time there was also in existence an unexecuted warrant against Sage charging him with highway robbery, a stick up of the public service payroll, at the town of West New York. This warrant was in the hands of the police authorities of West New York for execution, one of whom was Otis. Otis testified he saw the warrant. On the morning of May 22d, 1923, at about five-thirty A. M., Lieutenant Otis, Sergeant Black, Police Officers Weir, Walton, Dondon and Detective Connalin, drove to No. 19 Manhattan avenue, Jersey City, Weir being in uniform; all the others were in citizens clothes.

Then, upon inquiry, learning from the owner and occupant of the house that a man resembling the picture on the fugitive's card, exhibited to him by Officer Otis, was occupying rooms on the second floor of the house, Otis, Black and Weir proceeded upstairs to the door of the apartment indicated by the owner. The other three men were ordered to guard the front, back and side of the house. The only eyewitness to the shooting were Officer Otis, Sage, the plaintiff in error, and his companion May Miller. What happened may best be told in their own language from the record, thus: Lieutenant Otis testified they put their guns away, as directed by Black, as they were going upstairs; "Black knocked at the door." "*Q.* What happened? *A.* And someone said, 'Who is there?'" "He said, 'We are police officers from police headquarters, and you will do.'" "She said, 'Wait a minute and I will get some clothes on.'" "*Q.* Now, then, what was the next thing happened? *A.* Well, she opened the door." "*Q.* And when she opened the door what happened then? *A.* Well, I looked towards Black to see what he was going to say, and no more than I looked at Black two shots were fired, bang, bang, like that."

The plaintiff in error, Frank Sage, testified that he did not hear the above conversation between the police officers and May Miller—that he was standing at the dresser when the door flew open. "As the door flew open I seen a form there, a man's arm come up with a revolver. I bent over

and reached for the drawer for my gun." "Q. What did you do? A. I pulled it out quick as the form seemed to move—another form—and I fired one shot. "Q. Then what did you do? A. As I fired the one shot, I advanced toward the bed, I should judge about two or three feet, and as I did I fired two more shots." He then fired a shot at a man he saw in the yard, Walton, one of the police officers. May Miller testified, "After I heard these men I got up, started to dress myself. Q. Got out of bed? A. Got out of bed and dressed myself. Q. Yes. A. And then I went to the door, pushed back the bolt from the door and turned the key. As I put my hand on the door to open it, the door was pushed open quickly and a shot was fired immediately, which powder went into my eyes, across my eyes, and hurt my eyes, and put my hand to my eyes, and in the meantime there were three more shots fired and then everything was quiet. I do not know where any of the shots came from." Sergeant Black and Police Officer Weir were killed by two of the shots. Lieutenant Otis and Police Officer Walton were wounded. The plea was self-defense by Sage. May Miller was tried with Sage and acquitted by the jury. There are fifty-three assignments of error and twenty-three specifications of causes for reversal filed. They are argued under fourteen heads in the brief of the plaintiff in error.

Points not argued are presumed to be waived or abandoned, and therefore will not be discussed. *Reinfeld* v. *Laden,* 98 *N. J. L.* 709.

The first four points require no discussion, because it clearly appears to us from a reading of the testimony that, even though competent testimony was excluded by the court or improper testimony was admitted, it was harmless, in view of the fact that the plaintiff in error himself, upon the witness-stand, admitted the shooting of Sergeant Black and the firing of several more shots; and he admitted that he had escaped from the state prison, where he was confined on a charge of entering and larceny.

The rule is that when it clearly appears that the admission or rejection of such testimony could not have injuriously

affected the defendant on the merits of the case, it does not constitute a ground for reversal of the judgment. *Genz* v. *State,* 59 *N. J. L.* 488; *Hunter* v. *State,* 40 *Id.* 543. In addition to the existence of error in law, it must be shown that such error was, or might have been, prejudicial to the defense on the merits. *Ibid.; Lamble* v. *State,* 96 *Id.* 231.

The next point is that the court erred in admitting in evidence articles alleged to have been found in the rooms of the plaintiff in error after his arrest, consisting of percussion caps, a blackjack, dynamite, two guns, &c. These articles were properly admitted in evidence under the rule laid down in the cases of *State* v. *Laster,* 71 *N. J. L.* 586: *State* v. *Barone,* 96 *Id.* 417. The condition existing at a place where a homicide was committed is always the subject of proof. They afforded some explanation of the defendant's conduct in resisting the officers who had come to arrest him. His possession of the articles tended to show criminality on his part—that is, a killing committed for the purpose of preventing the discovery of these articles by the police.

The next point is that the court erred in permitting the state to abandon a count in the indictment for manslaughter, and in failing to charge the jury respecting that particular crime. The state had a right to abandon that count. It was not error for the court not to charge on the crime of manslaughter (*State* v. *Fiore,* 93 *N. J. L.* 362, and cases there cited) under the facts of this case.

The next point is that there was error in the court's instruction as to the required duration of willfulness, deliberation and premeditation.

The criticism is aimed at a single sentence, a single word in the charge detached from the context, viz., "at any moment before or at the time the shots were fired." The word *at* is the subject of the criticism. To appreciate fully the meaning of the sentence it must be read in connection with the entire passage of the charge in which it occurs. That passage of the charge complete is as follows: "It is said, in one of the decisions of our highest court, in dealing with this subject, that an unlawful killing does not amount

to murder in the first degree unless it should be found by the jury that the accused contemplated the killing—that is, premeditated it, then determined upon the killing—that is, intended it, then weighed such intent before carrying into effect—that is, deliberated upon it. But, while I have dealt with these terms, willful, deliberate and premeditated, in such a way as to indicate to you that they signify, as they do, three separate and distinct functions or operations of the human mind engaged in the premeditation of the killing, I do also charge you that the taking place of these functions of the human mind does not require necessarily any prescribed period of time, but that the mental acts to which I have referred are capable of being performed with that degree of speed with which the human mind is proverbally capable of acting. In other words, premeditation and intent to kill need not be for a day or an hour or even a minute, for if you, gentlemen of the jury, believe there was a design and a determination to kill distinctly formed in the minds of these defendants, or either of them, at any moment before or at the time the shots were fired, which design was deliberately and with premeditation carried out, it was a willful, deliberate and premeditated killing, and therefore murder in the first degree."

In *State* v. *Banusik*, 84 *N. J. L.* 640, decided by this court in 1906, the criticism as in this case was aimed at a single portion of the charge, viz.: "If an intent to kill be formed an instant prior to the act of killing, it is sufficient to render it an intent, and to make it willful, deliberate and premeditated, within the terms of the statute."

This court said, speaking through the present Chief Justice: "Standing alone, this excerpt might readily convey the idea that an intent to take life was so instantly carried into execution as to make it impossible that the homicidal act was either deliberate or premeditated."

But, in determining upon the legal accuracy of a charge, it is not permitted to extract a single sentence and construe it without regard to the context in which it appears. The instruction is to be construed as a whole, and the legal rule,

which was declared, thus extracted. Taking the whole charge upon this point, it does not seem to us to declare that a homicide, committed so immediately after the intent to take life has been formed, as to exclude the possibility of deliberation or premeditation, is murder in the first degree, but that, on the contrary, the fair purport of the instruction, taken as a whole, is that in order to constitute the crime of murder in the first degree, the design to kill must be fully conceived and purposely executed

This, as it seems to us, is a complete and satisfactory answer to the criticism of the judge's charge in the case under investigation. *"Or at the time the shots were fired"* does not necessarily, and in the circumstances of this case, having regard to the entire charge and all that was said on the subject, applied to the testimony of the plaintiff in error, mean on the instant. It does not mean that Sage, instantaneously with the firing of the shots, conceived the intention to kill. The charge of the court must be considered with reference to the case as it was made. *Brown v. State,* 62 *N. J. L.* 715. As thus construed, the charge in this respect is in harmony with the doctrine laid down by this court in the case of *State v. Bonofiglio,* 67 *Id.* 239, which has stood for twenty-two years unchallenged, as an accurate statement of the law on this topic. It would be well for the trial judges in their charges to the jury, in this class of cases, to adopt the language on this subject in that case, rather than attempt to formulate something just as good.

The next point is that the court erred in refusing to charge the jury certain requests submitted by the plaintiff in error upon the same topic discussed under point No. 7. Not so. They were charged so far as they were proper and so far as they had not been covered by the charge.

The next point is that the court erred in charging the jury "It is incumbent upon the defendant (*i. e.,* the plaintiff in error) to adduce evidence of facts and circumstances from which justification, excuse or extenuation may arise, unless such facts or circumstances appear from the evidence introduced against him." The plea was self-defense, the court

charged the jury that the killing was presumed to be murder of the second degree. No authorities are cited by the plaintiff in error in support of this point. We think the charge of the court above stated is sound and it is supported by the case of *Brown* v. *State,* 62 *N. J. L.* 666.

The next point is that the court erred in refusing to charge request No. 23. This point does not need any discussion. It was fully covered by the charge.

The next point is that the court erred in refusing to charge request No. 38, in reference to the right of arrest. This request was properly refused, for it was based upon the proposition that the officers had no right to arrest Sage at the time of their visit to his home. This is contrary to law. Sage had escaped from the state prison, where he was committed on a conviction for entering and larceny. A warrant was also out for him for robbery committed upon an employe of the Public Service Company, and this the officers who went to make the arrest knew, as Otis testified he had seen the warrant. *State* v. *Schilling,* 95 *N. J. L.* 150. In that case, the officer had reasonable cause to suspect the defendant guilty of crime, and was justified in making the arrest without a warrant. *State* v. *Brown,* 62 *Id.* 666, 696; *State* v. *Bertchey,* 77 *Id.* 640. See *Collins* v. *Cody,* 95 *Id.* 65.

This also disposes of the next point, viz.: The court erroneously instructed the jury that it might find the deceased was engaged in making a lawful arrest because there was no evidence to justify such a finding.

It also disposes of the next point, which challenges the legality of the instruction that the officers were within their legal right in arresting the defendant, or attempting to arrest him, if they or any of them had reasonable cause to suspect him of being guilty of a felony, although it afterwards appeared that no felony had been committed. *Brown* v. *State,* 62 *N. J. L.* 666.

The last point is, that the verdict is against the weight of the evidence under *Pamph. L.* 1921, *p.* 951, which permits an assignment of error that the verdict is against the weight of evidence.

This point does not require discussion. The facts as stated are sufficient. *State* v. *Karpowitz,* 98 *N. J. L.* 546.

Finding no error in the record the judgment of the Hudson Oyer and Terminer is affirmed.

PARKER, J. (dissenting).   Taking the whole charge together, and especially that portion quoted at length in the majority opinion, applicable to deliberation and premeditation, I am unable to construe it otherwise than as leading up to the culminating proposition that if the jury "believe there was a design and a determination to kill distinctly formed in the minds of these defendants, or either of them, at any moment before *or at the time* the shots were fired, which design was deliberately and with premeditation carried out, it was a willful, deliberate and premeditated killing, and, therefore, murder in the first degree."

This is positive and specific, and seems plainly incapable of reconciliation with the rule "appreciable time" laid down by the Chief Justice in *State* v. *Bonofiglio,* 67 *N. J. L.* 239; by Chancellor Magie in *State* v. *Zdanowicz,* 69 *Id.* 627; by Justice Garrison in *State* v. *Clayton,* 83 *Id.* 673, 674; and by the writer in *State* v. *Mangano,* 77 *Id.* 544.   In the last case the trial court said: "If you find that this defendant had formed in his mind an intent to kill, and then instantly he deliberately perpetrated the act to carry out the intention, that is the deliberation and premeditation which the law requires," &c.   This was held erroneous.

The case of *State* v. *Banusik,* in this court, 84 *N. J. L.* 640, was decided in November, 1906.   The judicial language "an instant prior to the act of killing," used by the trial court, was in effect conceded to run counter to the rule laid down in the Bonofiglio and other cases; but the court considered that it was so qualified by the rest of the charge as to be cured of harmful error, and went on to say that in any event, under the proofs, he was guilty of murder in the first degree, if guilty at all, because premeditation for two or three months had been fully shown.

238    COURT OF ERRORS AND APPEALS.

Kemp v. Del., Lack. & West. R. R. Co.    99 N. J. L.

The date of the decision in the Banusik case has been noted because, while later in time than the leading case of Donnelly v. State, cited in the main opinion, and also the cases of Bonofiglio and Zdanowicz, *supra*, it was earlier than either the Mangano or the Clayton cases, which, as I understand them, follow the earlier cases and enunciate what I understand to be the established rule.

Believing that harmful error was committed, I must vote to reverse the judgment.

Justices Kalisch and Katzenbach authorize me to say that they concur in the views above expressed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, BLACK, WHITE, HEPPENHEIMER, ACKERSON, VAN BUSKIRK, JJ.   8.

*For reversal*—PARKER, KALISCH, KATZENBACH, JJ.   3.