12 N.J. Super. 320 (1951)
79 A.2d 697
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOSEPH MARTINEK AND WALTER MARTINEK, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued February 19, 1951.
Decided March 14, 1951.
*322 Before Judges JACOBS, EASTWOOD and BIGELOW.
Mr. Paul T. Huckin argued the cause for the plaintiff-respondent (Mr. Francis V.D. Lloyd, attorney).
Mr. Albert S. Gross argued the cause for the defendants-appellants.
The opinion of the court was delivered by EASTWOOD, J.A.D.
The defendants were convicted of the crime known as "bookmaking" in violation of R.S. 2:135-3, as amended, L. 1940. Their asserted grounds for reversal are: (1) the erroneous admission of a "card, betting slips and two letters" and (2) the verdict was against the weight of the evidence.
The alleged bookmaking was conducted at the premises of the defendant Joseph Martinek, 151 Washington Avenue, Little Ferry, Bergen County, which was raided by members of the Bergen County Prosecutor's Office on April 19, 1950.
The undisputed facts are that the defendant, Joseph Martinek, was standing on the sidewalk in front of his "Food Products" store and accompanied the officers into the rear of the store building, which is separated from the front portion thereof by a partition. The defendant, Walter Martinek, was found seated at a table in the rear portion of the building, on which there was a telephone, radio, a number of betting slips, a copy of "National Racing Program," which contained the names and location of horses racing on April 19, 1950, corresponding with the betting slips on which parlay bets were recorded; also, cards setting forth the odds on different types of plays. The radio was in operation. The betting slips were identified by Detective Stewart as recordings of parlay bets on *323 horse racing with the track and horses and the bets noted for each of the designated horses. In the front part of the store cards were found bearing the telephone numbers of defendant's store, and taken from Walter Martinek's wallet were cards setting forth various betting odds on different types of play and on which was inscribed "Joe M." A betting slip was found in a jacket belonging to defendant, Walter Martinek; also in the rear part of the premises two letters were found, one addressed to "Joe and Wally" referring to the writer's losses of $400 and the other addressed to Joseph Martinek reciting the enclosure of $300 in money orders and referring to betting at the writer's location. Approximately $420 in cash was taken from the person of Joseph Martinek, $59.61 from Walter Martinek, and $16 in nickels was found in the rear of the premises. During the 45 minutes that the raiding party remained, one telephone call for Joseph Martinek was received, which concerned an order for potato chips. The defendants did not offer any testimony in their own behalf.
The court's admission of the "card, betting slips and two letters" was not erroneous. The defendants contend that the cards containing the names of the horses, the track locations and the bets on each horse named were not authenticated or identified with either of the defendants and their admission was erroneous. The betting slips were identified by Detective Stewart (whom the defendants conceded was an expert in bookmaking cases), as recordings of bets made on April 19, 1950, on different horses running at different race tracks throughout the country. "Property found near the scene of the crime, and concerning which there is evidence showing or tending to show its ownership or possession by accused when the crime was committed, may be exhibited to the jury, as may any property sufficiently identified which throws light upon the crime or connects accused with it, and is shown to have come from his possession or to have been found on his premises, or, there being sufficient evidence to implicate him, on the premises of a co-conspirator." 22 C.J.S., Criminal Law, § 710, p. 1206; State v. Laster, 71 N.J.L. 586 (E. & A. 1905); State v. *324 Morehous, 97 N.J.L. 285 (E. & A. 1922); State v. Sage, 99 N.J.L. 229 (E. & A. 1923); State v. Hauptmann, 115 N.J.L. 412 (E. & A. 1935). The admission of betting slips, racing forms and other gambling paraphernalia found on the premises in the possession of the accused has generally been recognized by our courts as evidence from which the jury might conclude the guilt or innocence of the accused on an indictment for bookmaking. State v. Tuzenew, 15 N.J. Misc. 584 (Sup. Ct. 1937); affirmed, State v. Suckow, 120 N.J.L. 190 (E. & A. 1938); State v. De Falco, 8 N.J. Super. 295 (App. Div. 1950); State v. Guida, 118 N.J.L. 289 (Sup. Ct. 1937); affirmed, 119 N.J.L. 464 (E. & A. 1938); State v. Morano, 133 N.J.L. 428 (Sup. Ct. 1945); affirmed, 134 N.J.L. 295 (E. & A. 1946).
The defendants contend that neither the authenticity nor genuineness of the two letters from a third person were established by any evidence and their erroneous admission was manifestly prejudicial and injurious to the defendants' rights, citing the case of State v. MacFarland, 83 N.J.L. 474 (E. & A. 1912), in support of their contention. The State contends that the letters were not offered to prove the transactions mentioned therein nor as direct proof of the offense charged in the indictment. In the MacFarland case the court held that the letters there written by a paramour to the defendant accused of murder "were admissible in evidence for the purpose claimed by the state, viz.: `To repel the presumption arising in favor of the prisoner from the fact that the deceased was his wife and to show a motive for the commission of the crime,'" but not admissible against the defendant for the purpose of establishing the truth of the contents thereof. Professor Wigmore (Wigmore on Evidence, 3d ed., § 1073, note 2, p. 92) in discussing the MacFarland case states:
"The following case is peculiar: 1912, State v. MacFarland, 83 N.J.L. 474, 83 A. 993 (wife murder; the defendant's intention to rid himself of his wife being in issue, letters of his paramour addressed to him, referring to his expressed intention to get a divorce, and retained by him, were held inadmissible for the purpose, as not having been impliedly assented to; five judges dissenting; the dissent *325 is clearly correct; the majority opinion overstrains the test of admissibility; mere possession should suffice, leaving the possessor to explain if he can."
However, we are bound by the rule laid down in the MacFarland case. Under that authority, the letters being addressed to defendants and found in their possession were admissible "as may any property sufficiently identified which throws light upon the crime or connects accused with it." 22 C.J.S., p. 1206, supra. In the admission of the letters in question, we find that the defendants suffered no manifest wrong or injury.
Our review of the record convinces us that the verdict was not against the weight thereof; that there was sufficient competent evidence to support the findings of the jury. "It is not the function of this court to weigh the evidence. The convictions rest upon a basis of rational inference, tantamount to legal proof of the fact, and are therefore supported by the evidence." Levine v. State, 110 N.J.L. 467 (E. & A. 1933). "It is the settled law of this State in order to justify the setting aside of a verdict as being against the weight of the evidence, this must be so clear as to give rise to an inference it was the result of mistake, passion, prejudice or partiality." State v. Auld, 2 N.J. 426 (Sup. Ct. 1949); State v. Monia, 132 N.J.L. 91, 96 (Sup. Ct. 1944); State v. Guida, supra; State v. Lederman, 112 N.J.L. 366, 370 (E. & A. 1934). We find no such inference here.
The judgment is affirmed.