Ruffin, Chief Justice,
 

 It has been contended on behalf of the prisoner, that there was not evidence that he committed the forgery ; or, if so, that he did it in the county of Stokes ; and, therefore, that the Court erred in stating to the jury that the testimony, if believed, was
 
 prima facie
 
 ■evidence of those facts, which was sufficient, if unexplained by the prisoner, to authorize them to find him guilty.
 

 It is certainly true, that the prisoner must be connected with the fabrication of the instrument by evidence, direct or circumstantial. It is equally true, that a making within the county is necessary. But that also may be presumed upon reasonable grounds. Few frauds, or offences partaking in their nature of fraud, are perpetrated openly, so as to be capable of express proof. If more than one person was present at the perpetration, it is almost certain that ■all .participated ; so that each is protected from testifying. Hence, there is both a necessity, and a propriety in resorting to presumptions from circumstances. It is possible, indeed, that a W'rong inference may be deduced from them; but the necessity is so pressing, that a bare possibility of mistake must not over-rule it; and while guilt is not presumed from any circumstances, unless, in the whole, they are apparently inconsistent with innocence; the danger- of injustice is rather ideal than real. Practically it promotes public justice, while it scarcely ever imputes guilt to one,
 
 *351
 
 who is not in fact the offender. In larceny, for instanoe, the possession of the stolen goods is evidence, that the possessor was the thief. It is the usual evidence. It is deemed cogent, because no more can be expected; being the best that is admitted by the nature of the case. It is obvious, however, that this changes the
 
 onus
 
 of offering the direct proof. It imposes it on the accused to show how the goods came to him, and therefore that he did not, but that some other person committed the theft. Why is this ? It is because it is peculiarly within the power of the prisoner to give evidence, how his own possession was gained. It is natural that he should offer it, if he came
 
 by'the goods
 
 honestly. To withhold it, must then be imputed to the non-existence of the fact. The force of the presumption, it is thus seen, depends upon the ability of the accused to show, with facility, the real truth, and his refusal to do so. If, in the case supposed, there be other circumstances, from which it may be judged, that, certainly or probably, his possession was not acquired by his own taking, then the whole presumption fails; as if, at the time of the theft, the prisoner was at too great a distance from the place to admit of his personal agency. So this presumption may be greatly weakened by the circumstance, that the accused would be put to a difficulty in explaining his possession, even were it an honest one; as if the theft and his possession were not recent. The presumption is, then, so much impaired, that guilt cannot be inferred from it alone. But in the absence of such circumstances, the possession of stolen property which the accused fails to give any reasonable account of, is the common and satisfactory evidence of his guilt. Whether this conclusion be one of law or of fact, seems to be hardly worth inquiring; for it is one of common sensei which every sound mind will draw, with the slightest acquaintance with mankind. The same principles and reason apply with equal force to every act done in secret, and with which, when it becomes known to the world, the accused is found to be the first and only person connected.
 

 Forgery is not an exception. It is true, the statutes usually provide against the passing or uttering of counter»
 
 *352
 
 feited instruments, as well as against the falsely making them. It is proper so to provide, because there may be many instances i» which the utterer could not reasonably be deemed to have been the fabricator, and others in which the presumption would be almost conclusive, that he was not. An instrument which is current as money, is an example of the former kind; and of the latter, one is furnished, when the utterer is illiterate and unable to write. There may be cases, therefore, which will not be reached by our act of 1801,
 
 (Rev.
 
 c. 572,) which does not extend to uttering, but only to forging and showing forth in evidence. But that does not prevent use being made of uttering, so far as the act of uttering is evidence of the act of forging. Now, with the exception of such papers as pass from hand to hand in the common transactions of life* the uttering of a forged paper, if unexplained, is in sound sense, evidence of the forgery of the paper by the
 
 utterer;
 
 and if the p?.per, as in this case, was in his hands in an incomplete state, and was produced by him in a completed state, and made in his own favour or used for his benefit* the proof is cogent and plenary, that his was the hand that fabricated it, or, at the least, that he was present and wittingly assented, and caused it to be fabricated. The Court was of that opinion in the
 
 State
 
 v.
 
 Britt,
 
 3 Dev. Rep. 122, and we remain satisfied with it. It is to be remembered, that the fact of forgery is, for the purpose of this ¡nqU¡ry} ta]ten for granted. Then, if the prisoner be not the forger, who is
 
 1
 
 There is not the least reason to attribute the act to any other person. When he says, that some other may have done it, he is fully answered by saying, that he ought not to have advantage of that possibility, because the proof does not connect
 
 him
 
 with the paper, and yet he refuses to offer evidence to render his supposed and possible fact even probable, while he could, if he chose, make it certain by direct proof. The affirmative inference is thus made as strong against him from his withholding the negative evidence he might give, as it could be made by express evidence on the part of the prosecution.
 

 The case of
 
 State
 
 v. Britt, 3 Dev. 122, approved.
 

 As a consequence from the same train of reasoning, the opinion of the Court is also against the prisoner, as to the
 
 *353
 
 county in which the forgery was committed. Th,e jury found it to be in Stokes; and we think that there was not only evidence fit and sufficient to be left to. them to authorize that finding, but sufficient also, if believed, alrno^t tp compel such a finding. It seems to. us to be a reasonable presumption, generally, that an instrument was. made at the place where its existence was, first known.' If this b,e not reasonable, why is it not so,? It must be, because it is. possible, or equally probable, that it was made at some other place. But in the case before us, wé have
 
 no
 
 evi-. dence, that the instrument v^as. made at any
 
 other place..
 
 It was certainly forged by the prisoner somewhere; and the question is, where ? If it be unreasonable, as is argued, to conclude that the place was that where it was. published, is it not yet more unreasonable, nay, absurd, to suppose that it was forged by him, at s.ome place where it was not found, and where it does not appear ever to have been ? It s.eems to be fairer reasoning, that as the uttering, a forged instrument of this sort, is
 
 prima facie
 
 evidence that the utterer is the forger, because he will not affix the act to any other person; so the uttering it at a particular place, by the person who forged it, must be evidence that he forged it at that place, because he was equally capable pf doing the act at any place, and he will not give to the deed, any other locality. The apparent necessity renders each of those presumptions equally reasonable and fair. The perpetration, and the place of perpetration, are both secret. They are concealed by the accused, and the state, can offer no evidence but such as connects the prisoner with the paper, at a particular place. If he will not disconnect himself from the instrument, or. disconnect the forgery from that place, the only result at which the mind can arrive, is that he forged it, and that he forged it there. If, therefore, there had been nothing more than the production of the forged paper by the prisoner in Stokes, it was evidence proper to be left to, the jury, that the crime was committed in that county, as there was nothing in the paper itself or
 
 dehors,
 
 to raise, the doubt that it was done, in another county.
 

 But whep to that presumption thus uiirehqUed, are
 
 *354
 
 added the other affirmative facts, that the prisoner received from the cashier, the identical paper in a blank ^orm’ ‘n the county of Stokes ; that he produced it in that county in its present form, a week afterwards, and again the subsequent week; that he was a stranger to the cashier, and in answer to his inquiry, told him that he lived in Guilford county; and upon his trial, which took place in Guilford, he gave no evidence of the truth of that representation, nor of a residence at any particular place; the original presumption becomes so strongly corroborated, as to make it almost certain, that the forgery was in fact committed in Stokes county, and that the prisoner could not have proved it t,o have been done elsewhere.
 

 The cases cited for the prisoner, are quite reconcilable with our opinion. They do not lay it down, that uttering is not evidence of the forging, or that uttering- at a particular place by the forger, is not evidence of the forgery at that place. The contrary is to be collected from them; for they proceed on the particular circumstances in each, which tended to prevent or rebut these presumptions. In
 
 Parkes and Brown’s
 
 case,
 
 2
 
 East, Pl. Cr. 992, Parkes forged the note; but there was no evidence that he ever had the note in his possession in Middlesex; for his accomplice Brown passed it. The very ground of the presumption, therefore, failed as against Parkes. Yet some of the judges even in that case held, that it was a case for the jury, on that and the other circumstances proved, namely, that Parkes was in Middlesex when Brown passed the instrument, and other notes of the same- kind were found on his person, when he was arrested in that county. But the majority of the judges thought that there was not sufficient evidence of the forgery there, and recommended a pardon : properly, as we think, because Parkes was not at all connected with the particular note at any time in Mid-dlesex. The presumption was not raised against him. In
 
 Crocker’s case, 2
 
 New Rep. (5 Bos. & Pul.) 87, it was otherwise. There the presumption did arise; but it was rebutted - by other circumstances. The prisoner was indicted in Wiltshire, where he had resided for a year, and where the forged- note was found in his pocket-book,
 
 *355
 
 at his lodgings, upon a search made during his absence on a journey to London. The note purported to be signed by one Tucker, who lived in Somersetshire, and to be dated two years before; at which time, and for one year afterwards, the prisoner also lived in Somersetshire, a neighbour to Tucker. These circumstances created a probability that the note was written in Somersetshire. It was not found on the prisoner, so that it was certain that it was not forged immediately before it was found, but at some time before; and it was just as probable, upon these facts, that it was written while the prisoner lived at his former as at his present residence; and more so, from the date. The opinion of the Court was never publicly given; but the reporters state that it was understood, that a majority of the judges thought “ there was not sufficient evidence, that the offence was committed in the county of Wilts.” This is not a satisfactory method of learning a judicial opinion. But if it was correctly understood, it does not seem that the evidence was not deemed proper to be left to the jury ; but only that the Court thought, the verdict had been rendered without “ sufficient evidence;” and therefore, recommended a pardon, not for error of law', but for a wrong conclusion of fact by the jury. The circumstances rendered it at least doubtful, where the forgery was committed ; and therefore, the pardon was properly asked. But that is not a question for this Court; which is confined to errors in law. If it were, this case would not call for a recommendation upon that ground; for .the presumptions here are not rebutted by any evidence whatever. In our opinion the case was left properly to the jury upon evidence which fully war-' ranted a verdict against the prisoner. In
 
 Crocker’s case,
 
 if the evidence was insufficient to prove the forgery in Wilts, it necessarily showed it to have been done in Somerset; and there was therefore, the means of bringing the offender to justice. But in this case if the prisoner cannot be found guilty upon an indictment in Stokes, he must be acquitted everywhere, although he is an acknowledged offender. It is impossible an admitted crime should go altogether unpunished; as would be the case if the
 
 *356
 
 uttering of a forged instrument in' a county, were not some evidence of the forgery there, and if nnrebutted, it were not; sufficient evidence of that fact.
 

 The case of
 
 the
 
 State
 
 v. Benton
 
 at the last term approved and followed.
 

 The other opinions of the Court to which the prisoner excepted, seem to us to be also correct.
 

 The act of 1777,
 
 (Rev. c.
 
 115, sec. 85,) gives thirty-five' peremptory challenges only on trials for life. Forgery, under the' act of 1801,
 
 (Rev. c.
 
 572,) is a misdemeanor, unless it be a second offence, and it is not so charged in this case.
 

 Ben ton’s case,
 
 at the last term (see ante, 196,) ruled that a prisoner cannot examine a juror to discover 'a cause 1 ' “ of challenge'; but he must first make his challenge, and ass*Sn thé canse, and then he may sustain it by the oath of the juror, or any other person.
 

 So far as Lamb and Boyd coiild establish an
 
 alibi,
 
 the prisoner had the benefit of their evidence. It does not appear what was the nature of his declarations to them, which he wished to get out; but whatever they were, they could not for him establish the truth of the facts declared, and were, therefore, properly rejected.
 

 The cumulative charges of forging, and wittingly assenting to the forgery, are according to the precedents'; and no other defect is perceived,in the indictment-, off which the motion in arrest of judgment can be sustained; and upon the whole record, the judgment must be affirmed
 

 Per Curiam. ■ Judgment affirmed.