STATE *vs.* VETO E. KOZUKONIS.

MAY 9, 1946.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CONDON, J.   Defendant Veto E. Kozukonis, alias V. E. Konis, was convicted by a jury in the superior court of forgery. After verdict he filed a motion for a new trial which was denied by the trial justice. The case is here on an exception to such denial and on twenty-three other exceptions to rulings which were made during the trial.

These exceptions have been briefed by defendant in four groups as follows: I, exceptions 8, 18 and 24, to the denial of his motion to dismiss the indictment, of his motion for a directed verdict of not guilty, and of his motion for a new trial respectively; II, exceptions 19 to 23, inclusive, to certain parts of the trial justice's charge to the jury; III, exceptions 1, 2, 3, 4, 5, 6, 7, 9, 10, 11, 12, 13, 14 and 15, to rulings on the admission of evidence; and IV, exception 16, to the denial of defendant's motion to pass the case, and exception 17, to the admission of certain evidence that was of a character akin to the evidence which was the basis for the motion to pass the case. We shall follow such grouping in our treatment of the exceptions.

Before we proceed to discuss them, however, it may help to a clear understanding of such discussion if we make a brief summary of what we deem to be the salient facts in evidence. On Saturday, September 4, 1943, defendant gave to Anthony Gaudio, a storekeeper in Providence, a check for $46.34 in payment of a purchase of merchandise in the amount of $2.50 and received the change in cash. The check was payable to J. T. Dunn and bore what purported to be his indorsement when defendant handed it to Gaudio. The check was drawn by Walsh-Kaiser Company, Inc., of Providence, hereinafter called Walsh-Kaiser, and appeared to be for wages due the payee for the week ending August 28,

1943. Defendant, before he made his purchase, said to Gaudio: "I just come from work and if you cash my check I will do a little shopping", and Gaudio replied, "It is all right, I am willing." Some weeks later, after Gaudio had passed this check on to one of his creditors, it was returned to him because the name of J. T. Dunn on the back of the check was a forgery. Gaudio testified that at the time defendant gave him the check he did not know defendant's name but he knew him by sight.

Defendant and Dunn were employed in the shipyard of Walsh-Kaiser in Providence. Each had a check due for wages for the week ending August 28, 1943. On Thursday, September 2, 1943, at about 2:30 p. m., defendant called at the office of assistant paymaster George F. Johnston in the pay roll office building and asked for his wages. Miss Margaret Roessler, Johnston's secretary, attended to his request and took from Johnston's desk, in defendant's presence, a group of checks among which she found his check. She then informed him that his wages had been attached and that she could not give him his check. She thereupon replaced the checks in the desk and defendant left the office. On the same day between 3:15 p. m. and 3:30 p. m. the office was left unattended when Miss Roessler went into the yard to assist Johnston who was out there "paying off" the employees. After an absence of ten minutes she returned to the office and as she was entering the pay roll office building she saw the defendant coming out. Johnston also saw the defendant near the building a few minutes later. At about 4 p. m. it was discovered that the checks which were in Johnston's desk were missing and they were never found.

On the next day, Friday, September 3, 1943, at 7:30 a. m. defendant passed to Saul Falcofsky, at his barroom in Providence, a check for $46.01. That check was drawn by Walsh-Kaiser, payable to the order of the defendant, and purported to be for his wages for the week ending August 28, 1943. Defendant indorsed this check in the presence of Falcofsky, who had cashed his pay check on at least two other occasions.

However, in indorsing the check this time defendant had started to print his name when Falcofsky stopped him and told him to write his signature. Falcofsky's testimony to that effect is corroborated by the check itself which is in evidence as an exhibit. Miss Roessler identified the check as the one which she had handled when defendant came to Johnston's office on Thursday, September 2, 1943 inquiring for his wages.

Dunn called at Johnston's office for his wages on Friday, September 3, 1943. He was told at first that they were under attachment, but later after he had convinced Johnston that a mistake had been made a new check in place of the one that was in the missing group of checks was drawn and given to him. He testified at the trial to such facts and in addition denied that he had ever received the check that had been passed on Gaudio or that he had written his name on the back of it.

Defendant testified that he did not pass the Dunn check on Gaudio. He also denied that he had passed his own check on Falcofsky. He testified further that Johnston's office was easy of access to many people and that any one who came into that office could readily be seen by employees in adjoining offices which were separated from Johnston's office merely by glass partitions. He also testified that Gaudio knew him by name as well as by sight. He admitted that he had been convicted of several offenses including tampering with an automobile, driving an unregistered automobile and obtaining money under false pretenses.

I.

At the conclusion of the state's evidence defendant moved to dismiss the indictment on the ground that no legal evidence had been presented on which a verdict of guilty could reasonably be based. His motion was denied by the trial justice and defendant contends, under exception 8, that this was error. At that stage of the trial defendant had no right to invoke the court's judgment on the legal sufficiency of the evidence. In *State* v. *Blood,* 70 R. I. 85, we passed on the cor-

rectness of a ruling of the superior court on a motion to dismiss, but that motion was made before trial. Moreover, it was grounded solely on a question of law and not on the legal sufficiency of the state's evidence to raise a question for the jury. It was more in the nature of a motion to quash the indictment and in the circumstances defendant's exception to its denial presented a justiciable question which was properly cognizable by this court. The instant motion, however, if proper at all, can be considered as no more than a motion for a nonsuit in a civil case and as such it is addressed to the trial justice's discretion, unless defendant elects to rest his defense on the state's evidence. Since defendant did not so rest, exception 8 is wholly lacking in merit and is entitled to no further consideration. See *State* v. *McElroy*, 71 R. I. 379.

At the conclusion of all the evidence defendant moved for a directed verdict of not guilty. The trial justice denied the motion and under exception 18 it is contended that he erred. Defendant argues that there was no direct evidence that he indorsed Dunn's name on the Dunn check and that there was no basis in the evidence for a reasonable inference that he did. He also contended that there was no proof of forgery because the state had failed to show that Dunn did not authorize anyone to sign his name on the check. Finally, defendant contended that there was no proof of venue, because it was not shown that the forgery, if any, was committed in Providence county where he was indicted and tried.

Evidence that the indorsement was a forgery was vital to the state's case. It was incumbent on the state to show that Dunn not only did not write his name on the back of the check but also that he did not authorize anyone else to do so. *State* v. *Jones*, 81 Utah 503; *People* v. *Whiteman*, 114 Cal. 338; *Owens* v. *State*, 16 Ala. App. 413; 26 C. J., 959, §116, and 972, §138. In the instant case it is true that there is no direct evidence that Dunn did not authorize anyone to indorse the check, but, nevertheless, in our opinion, there is evidence from which it may be reasonably inferred that he

never so authorized anyone. The missing check was drawn in payment of his wages. It was mistakenly included among a group of checks which were for wages that were under attachment. He convinced his employer of such mistake and received a new check which was drawn in place of the one that was missing. Unless we assume that Dunn was *particeps criminis* with the forger, and there is not the slightest suggestion in the evidence to support such an assumption, it is reasonable to infer from his conduct and other pertinent facts in evidence that Dunn had no knowledge of the whereabouts of the missing check, that he had never received or seen it and that he did not authorize anyone to indorse it. In *State* v. *Jones, supra,* it was recognized that evidence of lack of authority might be inferred, although in that case the court was unable to find any evidence from which such an inference could be reasonably drawn. On the contrary, in the instant case, there is such evidence.

Was there any evidence that the forgery was committed in Providence county? Here again it is true that there is no direct evidence of that fact, but it is seldom in cases of this kind that such evidence is available. It has been truly said that forgery is hard to prove "and hence is often made out partially by positive evidence, and partially by circumstantial evidence." 26 C. J. 963, §123. This is obvious in reference to proof of the venue of the forgery. Consequently, it is held by the great weight of authority that, in the absence of other proof, evidence of the passing of the instrument in a certain county is sufficient to entitle the state to go to the jury on the question of venue. 26 C. J. 975, §149-150. In *Green* v. *State,* 152 Miss. 282, it was held that venue was sufficiently proven by proof of the county in which the check was passed. Substantially to the same effect is *State* v. *Morgan,* 19 N. C. 348. In any event, since it is not an element of the offense charged it need not be proved beyond a reasonable doubt. *People* v. *McIntosh,* 242 Ill. 602.

In the case at bar the direct evidence shows that the check was drawn in Providence, that it was passed there by the

defendant and that it was never known to have been outside that county. From such evidence we think that the jury could reasonably infer that the check was indorsed there. But defendant contends, as we understand him, that the jury was not entitled to consider the evidence of the passing of the check, because they had returned a directed verdict of not guilty of a second count in the indictment which charged the defendant with uttering the forged indorsement. In this respect defendant seeks to obtain too broad an immunity by reason of such verdict. Verdict on that count was directed because the state had failed to allege therein that defendant knew that the indorsement was a forgery when he uttered it. The effect of that ruling was solely to absolve defendant from liability to conviction and punishment under that count. It did not expunge from the record the testimony of Gaudio that the defendant had passed the check on him in Providence.

Was there any legal evidence from which the jury could draw the inference that defendant forged the indorsement on the Dunn check? Defendant argued that there was a lack of such evidence and that the state sought to supply it by a pyramid of inferences which amounted to mere conjecture. He further argued that whatever basis, if any, there was in the evidence for inferring that he stole the Dunn check, there was none upon which to base the inference that he forged the indorsement. Mere possession and passing of a genuine instrument bearing a forged indorsement does not, he contends, furnish any basis for the inference that the possessor is the forger. Defendant has cited in his brief numerous authorities which, he claims, support that proposition, but we need not cite them here because we have no doubt that evidence of mere possession and passing, without more, would not raise a legitimate inference that the possessor and utterer had necessarily forged the indorsement. However, we shall hereinafter refer to some of defendant's authorities to show that even in those cases it was recognized that such possession and passing was a circumstance which, in connec-

tion with other circumstances, would warrant sending the case to the jury.

We are of the opinion that there is in the instant case something more than the mere evidence of defendant's possessing and passing the Dunn check. There is the testimony of Falcofsky that defendant early in the morning of the next day after the pay checks were missing from Johnston's desk passed his, defendant's, check at Falcofsky's barroom. There is also Gaudio's testimony that defendant pretended that the Dunn check was his, defendant's, pay check. From such direct evidence, coupled with other direct evidence of his visit to Johnston's office and the knowledge which he acquired of the place where his check was kept and the reason why it could not be given to him, it was reasonable, in the absence of an explanation by the defendant, for the jury to infer that he stole both checks. The law seems to be settled to this extent at least that possession of stolen property recently after the theft is, in the absence of a satisfactory explanation, evidence from which the jury may infer that the possessor is the thief. *Hunt* v. *Commonwealth,* 70 Am. Dec. (Va.) 443, 447 n.; *State* v. *Drew,* 101 Am. St. Rep. (Mo.) 474, note 481 at 495. By analogy this principle has been carried over into the law of forgery. *State* v. *Morgan, supra.* Some authorities hold that it raises a conclusive presumption of guilt, but it is not necessary for our present purpose to go so far. 26 C. J. 961, §119.

There is a difference, however, in the application of this principle to a forged instrument and to a genuine instrument bearing a forged indorsement. In the latter instance there must be something more in evidence than the mere possession and passing of the instrument to warrant an inference that the possessor forged the indorsement. As was said in *Miller* v. *State,* 51 Ind. 405, at 406, which is one of defendant's authorities hereinbefore referred to, "We do not think it can be laid down as a rule of law that the uttering and publishing as true of a commercial instrument, with the name of the payee forged thereon, raises a presumption that the person

uttering and publishing is guilty of forging the endorsement." But the court immediately went on to add, and this language we think defendant has ignored or overlooked, "On a charge of the forgery of the name, the uttering and publishing are circumstances to be considered by the jury, with any other evidence bearing on the question of the forgery, and what weight shall be given to the uttering and publishing is to be determined by the jury, in the same manner as they determine the weight of other evidence in criminal cases."

And in *State* v. *Miles,* 22 Ida. 166, at 171, another of defendant's authorities, the court observed: "We have no doubt but that a jury would be authorized and justified in considering the fact that the defendant cashed the check which contained the forged indorsement thereon as a circumstance against the defendant, but it would not be sufficient on which to rest a verdict of conviction." In the instant case there was something more for the jury to consider than the mere passing of the check. There was the fact that defendant, in effect, represented himself to Gaudio to be the payee of the check. And there were the further facts that such check and defendant's own check were in the same group of pay checks withheld from employees because their wages were attached; that defendant's own check was never delivered to him and was without any indorsement before he passed it on Falcofsky; and that he attempted to print rather than sign his name on the back thereof. From that direct evidence the jury could reasonably infer that the Dunn check was likewise unindorsed when it came into defendant's possession and that the indorsement which it bore when he passed it on Gaudio and represented it as his pay check had been placed there by him. For these reasons we are of the opinion that the trial justice did not err in denying defendant's motion for a directed verdict of not guilty.

Exception 24 is to the denial of the defendant's motion for a new trial. Under this exception he contends that the verdict is against the weight of the evidence. We see no merit in this contention. On the evidence and the law applicable

thereto, as given to them by the trial justice, the jury was amply justified in finding defendant guilty. The trial justice, therefore, did not err in approving their verdict and denying the motion for a new trial. Defendant's exceptions 8, 18 and 24 in this group are accordingly overruled.

## II.

Defendant, however, has expressed his disagreement with certain statements of the law which the trial justice gave to the jury in his charge. He has also expressed dissatisfaction with certain comments on the facts which the trial justice made at the same time. Under exception 19 defendant contends that the trial justice, in summarizing the evidence at one point in his charge, virtually indulged in a "state's argument" and further that he made a number of misstatements of fact which were highly prejudicial. We have carefully read the portion of the charge objected to and we are unable to agree that either ground of the exception is well founded. The trial justice's references to the facts in the record were substantially accurate, and there was nothing in his comment thereon which would, in our opinion, justify defendant's contention that it "virtually amounts to a state's argument."

Exception 20 is to a portion of the charge wherein the trial justice stated substantially that possession by the accused of property recently stolen, if unexplained, warranted the jury in drawing the inference that the accused was the thief. Defendant contends that this is not a correct statement of the law, but as pointed out in our discussion of exception 18, and for the reasons there stated, we disagree with defendant's contention. It is to be noted that here, as throughout his charge, the trial justice instructed the jury not that they must so infer but rather that they might infer. As thus limited, his charge at this point was without error.

Under exception 21 defendant objected to the statement of the trial justice to the effect that it is common knowledge that when pay checks are made out to the order of the employees and those checks are kept by the maker and not

delivered to the employees, that they do not, while the maker retains them, have a written indorsement of the payee, and that there is evidence here of the absence of such indorsement, where Falcofsky says that he saw defendant write his name on the back of his check. If by this statement it was the intention of the trial justice to charge the jury that they must assume that there was no indorsement on the Dunn check when it was in the hands of the maker we would have grave doubt of the correctness of the instruction, but we do not so understand it. We consider it rather a statement to the effect that the jury might infer from the circumstances surrounding the existence of the check and its being withheld by the maker from the payee, that the latter had not indorsed it. That this is the true interpretation of the statement we think is clearly borne out by the trial justice's own reference to Falcofsky's testimony concerning the indorsement by defendant of his own check. This interpretation is also consistent with the rest of the charge in which the trial justice has exercised constant care to impress upon the jury that it was their right to draw certain inferences from the evidence and not that they *must* draw such inferences. For these reasons we find that the statement did not prejudice the defendant.

Exception 22, to another portion of the charge, raises substantially the same question as exception 21 and defendant seeks to support it by citation of the same authorities upon which he relied in support of exception 18, to the denial of his motion for a directed verdict in his favor. For the reasons stated in our treatment of the latter exception, we are of the opinion that the trial justice correctly instructed the jury in this portion of his charge.

Under exception 23 defendant contends in substance that the charge as a whole was prejudicial, because the trial justice was not impartial in exercising his privilege to refer to and comment upon the evidence. Defendant argues that the trial justice dwelt with some emphasis upon certain essential evidence in the state's favor while at the same time he almost

wholly ignored certain evidence favorable to the defense. In carefully examining the entire charge we have noted that when the trial justice seemed to dwell on certain evidence it was clearly for the purpose of elucidating, for the benefit of the jury, some principle of law which it was necessary for them to know in considering such evidence, and not for the purpose of impressing upon them his opinion of the probative force of such evidence. We think that the charge was free from the taint of one-sided emphasis in favor of the state which was referred to in *State* v. *Gallogly*, 47 R. I. 483. The rule of impartiality there enunciated is binding upon a trial justice who undertakes to comment upon the evidence. After a fair consideration of his whole charge we are of the opinion that the trial justice neither consciously nor unconsciously violated such rule. Exceptions 19, 20, 21, 22 and 23 are accordingly overruled.

### III.

Defendant argued, under this group, fourteen exceptions to rulings of the trial justice on the admission of evidence. Most of these exceptions, he conceded, do not constitute serious errors of law. However, he states that he is pressing all of them because their cumulative effect was such as to deprive him of a fair and impartial trial. We have carefully considered each exception and we are of the opinion that taken either individually or collectively they are clearly lacking in merit. We are satisfied that the trial justice's rulings worked no prejudice to the defendant and that they did not deprive him of a fair and impartial trial. Exceptions 1, 2, 3, 4, 5, 6, 7, 9, 10, 11, 12, 13, 14 and 15 are therefore overruled.

### IV.

In this group there are only two exceptions. Under exception 16 defendant contends that the trial justice erred in denying his motion to pass the case when defendant's counsel claimed that certain previously excluded evidence was indirectly brought to the attention of the jury by a witness while testifying for the state. The trial justice disagreed with defendant that such evidence had actually come to the

jury's attention in the manner complained of by counsel. Whether it did or not we are unable to determine from the transcript. Moreover, whether the objectionable evidence, which had reference to the lack of defendant's photograph on his "employment termination slip", came to the jury's attention or not is of slight importance as it was not vital to the state's case. In our opinion the jury's judgment of defendant's guilt or innocence could not, by such evidence, have been seriously affected to the prejudice of the defendant. The evidence which was properly before them and from which they were authorized to draw certain inferences was sufficient by itself to establish defendant's guilt beyond a reasonable doubt. Exception 17, to the admission of certain evidence, raised a like question as exception 16 and in our opinion, for the same reason, is equally lacking in merit. Both exceptions are accordingly overruled.

All of the defendant's exceptions are overruled, and the case is remitted to the superior court for further proceedings.

*John H. Nolan,* Attorney General, *Raymond F. Henderson,* Special Counsel, for State.

*Aram A. Arabian,* for defendant.