[Crim. No. 491. Fourth Dist. June 7, 1945.]

THE PEOPLE, Respondent, v. WILLIS H. DOETSCHMAN, Appellant.

Edgar B. Hervey and Henry F. Walker for Appellant.

Robert W. Kenny, Attorney General, Frank Richards, Deputy Attorney General, Thomas Whelan, District Attorney, and Robert L. Barbour, Deputy District Attorney, for Respondent.

BARNARD, P. J.—The defendant was tried on an indictment containing three counts. Count I charged him with statutory rape in connection with a girl 16 years old, alleged to have been committed on July 10, 1944. Count II charged him with a violation of section 702 of the Welfare and Institutions Code, alleged to have been committed with the same girl on the same day. Count III charged another violation of said section 702 in connection with the same girl, alleged to have been committed on June 30, 1944.

The jury was unable to agree on the charges set forth in counts I and III but found the defendant guilty on the charge contained in count II. The court sentenced the defendant to imprisonment in the Industrial Road Camp for one year, and he has appealed.

The appellant was a science instructor in one of the San Diego high schools, and also was doing certain research work at the San Diego Zoological Hospital, using a laboratory room at the zoo hospital for that purpose. The complaining witness had attended the appellant's biology and chemistry classes in high school and after school closed on June 16, 1944, she was voluntarily assisting him in his work in the

laboratory at the zoo hospital. According to the theory of the prosecution the acts involved in all three counts of the indictment took place in that laboratory. The appellant does not contend that the evidence is insufficient to support his conviction on count II, but does contend that the only evidence in the record in support of that charge is that of the prosecutrix, that her testimony was entirely without corroboration, and that the evidence supporting a conviction on that count is extremely weak, making more prejudicial any errors which occurred. We are unable to agree with the contention that the evidence supporting this conviction is weak or unsatisfactory. We regard it as unusually strong for a case of this nature where the direct evidence of other eyewitnesses is not usually obtainable. On the other hand, the record indicates that the appellant was extremely fortunate in obtaining a disagreement among the jurors with respect to the charges involved in the other two counts. Without reviewing the evidence it may be observed that the testimony of the prosecuting witness, with respect to the offense alleged in count II, is corroborated by many other facts and circumstances appearing in the record, including a most important admission made on the stand by the appellant himself.

■ Appellant's first point is that the court erred in instructing the jury that "it is not essential to a conviction in this case . . . that the prosecutrix . . . should be corroborated by the testimony of other witnesses." While the appellant concedes that section 702 of the Welfare and Institutions Code does not contain any requirement for corroboration in such a case he argues that, since the prosecuting witness was concerned in the commission of this crime, she was a principal under section 31 of the Penal Code and thus liable to prosecution for the identical offense, and that it follows that section 1111 of the Penal Code, requiring corroboration of the testimony of an accomplice, is therefore applicable.

Section 702 of the Welfare and Institutions Code does not require corroboration, and none is necessary (*People* v. *Lucas,* 16 Cal.2d 178 [105 P.2d 102, 130 A.L.R. 1485]). Moreover, the court here gave a cautionary instruction to the effect that such a charge is easily made and difficult to disprove, for which reason the testimony of the prosecuting witness should be carefully examined, as suggested in the case just cited. Under section 702 the minor involved is regarded as the

victim and the offense there denounced is the harmful act to that victim with the resulting harm to society in general. By no stretch of the imagination can it be said, in a prosecution under that section, that the minor involved is a principal in the sense that he or she could be prosecuted for the same identical offense, within the meaning of section 1111 of the Penal Code. Such cases are analogous to statutory rape cases in which it has been consistently held that the minor victim is not an accomplice.

It is further argued in this connection that there was no corroboration of the testimony of the prosecuting witness aside from certain evidence relating to counts I and III, upon which the jury disagreed, and that those facts cannot be used as corroboration in connection with count II because it must be taken, in view of that disagreement, that the jury did not accept those facts as true. Corroborating evidence need only tend to connect a defendant with the commission of a crime. Not only is there much corroborating evidence which is not specifically related to the charges in counts I and III, but the appellant is in error in contending that because the jury disagreed as to those counts it thereby found, in effect, that none of the evidence relating to those counts was true. The case was all tried together and most of the evidence was put in for its effect on the entire case. While the jury may have entertained a doubt with respect to some element involved in counts I and III, respectively, this is far from a finding that none of the evidence which might have some relation to those counts was true. Much of that evidence may properly be considered in connection with count II and much tends to connect the defendant with the commission of that offense. This and other evidence, including a part of the appellant's testimony, furnishes ample corroboration for the testimony of the prosecuting witness, if such corroboration were needed.

It is next contended that the court erred in two instances in admitting hearsay evidence. In the first instance, an investigator in the district attorney's office was permitted to testify, over an objection, that on July 11, 1944, the prosecutrix told him of her relationship with the appellant and further told him that she had been hoping that something would come up which would stop those relations as she knew they were not right and wanted them broken. In the other

instance, a doctor who examined the prosecutrix on July 20, 1944, was allowed to testify, over the objection of the appellant, that at that time the prosecutrix had told him that she had had sexual intercourse with the appellant on four occasions and that prior thereto the act charged in count III had been committed. In each instance the evidence was admitted and the court instructed the jury that it was received not to prove the facts in this case, but for the sole purpose of tending to show that the prosecuting witness had not been controlled by threats and that she had not fabricated something for the purpose of this case alone. Later, in the general instructions, the court again instructed the jury to this effect and more in detail.

The prosecuting witness was an unwilling witness who was obviously friendly to the appellant and she tried in her evidence to protect him as much as she could. Appellant's counsel was contending that the prosecuting witness was frightened when she was taken to the district attorney's office for questioning and when she testified before the grand jury, and was trying to establish that she was threatened with a charge of perjury and with being taken from her parents and placed in a home, although she testified "I wouldn't say 'threatened.'" Apparently, the evidence here complained of was admitted under the rule announced in *People* v. *Kynette*, 15 Cal.2d 731 [104 P.2d 794], to the effect that when a witness has been charged with improper motives or influences, or with recent fabrication, hearsay statements may be introduced for the purpose of showing that consistent statements had been made at a time prior to the alleged fabrication or prior to the time the motive of interest existed. Under the circumstances here appearing, the evidence involved in the first instance was admissible under this rule, there being some evidence that the statement was made before the fears or threats were claimed to have been aroused or made. This is not true with respect to the statements to which the doctor testified. ■ Clearly, the objection there made should have been sustained. However, this evidence was given as a part of the doctor's statement of his examination of the prosecuting witness and what he then found. The damaging part of this evidence was repeated several times by the prosecuting witness in her testimony while on the stand and all of the damaging part related to the charges

involved in counts I and III, on which there was no conviction. There was other evidence of similar statements made by the prosecuting witness before any investigation was started and the whole issue as to fears on her part or threats made against her was gone into thoroughly and at great length. Any error in this connection could not, under the circumstances shown by the record, be held sufficiently prejudicial to justify a reversal.

It is next contended that the court erred in receiving in evidence an exhibit consisting of an envelope containing certain samples of hair. One of these was admittedly a lock of hair from the head of the complaining witness. Other samples were admitted to be human pubic hair. The complaining witness testified that the appellant had asked her for some of her pubic hair but that she had not given him any. The appellant testified that he had used this hair in making a study of crab lice. An investigator in the district attorney's office testified that this exhibit was found in the appellant's laboratory on July 11, 1944, the day the prosecuting witness was first brought to the district attorney's office; that the envelope was shown to the appellant; and that he stated that it contained pubic hair which he had obtained from ''a lady friend,'' that one lock of the hair was obtained from the head of the prosecuting witness, and that she had submitted both kinds of hair to him. It is argued that this exhibit had no bearing upon the issues in the case and that its only possible purpose was to cause the jury to speculate as to what type of person would make a collection of pubic hair. This evidence tends to corroborate some of the evidence given by the prosecuting witness and it cannot be said that it bore no relation to or was not connected with the case. It was found in his possession, his explanation presented a question for the jury, and the evidence was properly admitted as one of the surrounding circumstances. (*People v. Cook*, 148 Cal. 334 [83 P. 43].)

It is next argued that the district attorney was guilty of prejudicial misconduct in that he asked questions of three witnesses with the intention of implying that the appellant had had improper relations with other girls, knowing these matters to be inadmissible. In the first instance, the prosecuting witness was asked whether, in a conversation between herself and the appellant to which she had testified, there had

been any conversation with him about "whether or not he had other girls up there." The witness replied "No." Appellant's counsel objected to the question but immediately withdrew the objection. The district attorney then asked "You say that he didn't tell you he had other girls up there?" An objection to this question was sustained. The district attorney then asked the witness to read certain lines of the transcript of her testimony before the grand jury to see if her recollection was refreshed as to whether or not the appellant had made that statement to her. An objection to this was sustained. The witness was an unwilling witness who plainly showed her friendship for the appellant and the district attorney was apparently attempting to impeach her but the matter was dropped when objections to two questions were sustained.

Complaint is then made of certain questions asked of another girl who appeared as a witness, with reference to the appellant's conduct with her. The questions complained of were all asked on redirect examination after the appellant in his cross-examination of the witness had gone into these matters, or later after this same witness had been called by the appellant and while she was being cross-examined by the prosecution. Insofar as this witness was concerned these matters were first raised by the appellant.

Another witness, a negro janitor at the zoo laboratory, was asked similar questions in connection with a conversation or conversations he testified he had had with the appellant. Not only were these questions as to statements made by the appellant to the witness, but objections were sustained and in this connection the appellant made assignments of misconduct. In each instance the court sustained the objection and also instructed the jury as requested.

Conceding that these questions should not have been asked there was some provocation and appellant's counsel, for an obvious purpose of his own, at other times went into the same and similar matters to a much larger extent. While the district attorney erred in asking the questions, no such intentional misconduct appears as would justify a reversal on that ground.

▮ Appellant's final contention is that the sentence imposed upon him is illegal and void. It is argued that section 19a of the Penal Code superseded section 21 of the Juvenile

Court Act (now 702 of the Welfare and Institutions Code); that section 19a limits jail terms for misdemeanors to a period of one year and, in a second sentence, provides that where any county has established a penal farm or road camp commitment thereto may be for such a period as the court may order, within the limits prescribed by statute for the particular offense; and that it was held in *People* v. *Lewis,* 13 Cal.2d 280 [89 P.2d 388], that the second sentence of 19a is unconstitutional. It is also argued that any other statute which purports to permit counties to establish road camps or similar institutions, to which persons convicted of misdemeanors may be sent, are likewise unconstitutional because they provide for a different punishment of the same offense in such counties than that provided in other counties, and that such a statute is neither general in nature or uniform in operation.

In *People* v. *Lewis,* 13 Cal.2d 280 [89 P.2d 388], it was not directly held that the second sentence of section 19a is unconstitutional. The holding was that the first sentence of that section, limiting confinement in the county jail to a period of one year in misdemeanor cases, is valid and separable from the second sentence of that section even though it be assumed that the second is unconstitutional. Apparently, even the assumption that the second sentence was unconstitutional was based on the fact that the language there used might permit the imposition of a longer term in counties having penal farms than that imposed in other counties, and not because the place of confinement was different. It was also pointed out in that case that under that statute a "penal farm," as provided for in 19a, would form no part of a county jail.

In 1921, the Legislature passed an act providing for the establishment and administration of industrial farms or industrial road camps, which may be established in each county of the state. (Stats. 1921, p. 1615; amended by Stats. 1935, p. 403; Stats. 1939, ch. 252.) Section 1 of that act states that its purpose is to make possible the substitution of constructive labor for profitless prison confinement in order to benefit the convicted person. Section 6 provides that any person convicted of a misdemeanor, in the superior court of any county having established such a farm or camp, may be sentenced to imprisonment therein or in the county jail, in the discretion of the court. Section 10 provides for the payment of certain compensation for the benefit of the pris-

oner or his dependents. Section 14 provides that "Any industrial farm or industrial road camp established under the provisions of this act shall be considered a county jail, . . . for all purposes not inconsistent with the provisions and purposes hereof."

By the provisions of this act an industrial road camp is considered as and declared to be a county jail. In effect, such a camp is made a second or alternate county jail under circumstances which are very much more favorable to the prisoner than are the conditions necessarily found and maintained in a county jail of the original type. So far as we are aware there are no provisions in law that a county may not maintain two county jails, and none that one jail must be handled and conducted in the same manner as another in the same county. This statute creates no lack of uniformity as between different counties in connection with the length of the term to be served, this matter being left to other statutes. The statute is general and uniform in that it permits all counties to establish such camps. In our opinion, there is no such a difference in punishment or lack of uniformity in operation, in connection with this statute, as to render its provisions unconstitutional, as here claimed, and no discrimination of which the appellant may complain.

While we have no doubt of the constitutionality of this statute and of section 6 thereof, insofar as that question is here raised, it may be pointed out that if the appellant were sustained in his contentions he would be harmed rather than benefited, as such a holding could only require a reversal for the limited purpose of resentencing him to confinement in the more conventional and longer established type of county jail. (*People* v. *Lewis,* 13 Cal.2d 280 [89 P.2d 388].)

We find no errors which, especially in view of the provisions of section 4½ of article VI of the Constitution, are sufficient to require or justify a reversal.

The judgment is affirmed.

Marks, J., and Griffin, J., concurred.

A petition for a rehearing was denied June 19, 1945, and appellant's petition for a hearing by the Supreme Court was denied July 5, 1945. Carter, J., and Schauer, J., voted for a hearing.