## RILEY McCAINE V. THE STATE.

No. 23882. Delivered February 25, 1948.
Rehearing Denied May 5, 1948.

*George Camp* and *Jack Brookshire,* both of Beaumont, and *Sam S. Minter,* of Houston, for appellant.

*Jep S. Fuller,* County Attorney, and *Ramie H. Griffin,* Assistant County Attorney, both of Beaumont, *A. C. Winborn,* Criminal District Attorney and *E. T. Branch,* Assistant Criminal District Attorney, both of Houston, and *Ernest S. Goens,* State's Attorney of Austin, for the State.

GRAVES, Judge.

Under an indictment for murder with malice, appellant was convicted by the jury for the unlawful killing of Elnora Collins, and by them given the penalty of death.

The facts disclose that on September 30, 1945, the deceased was seen in Houston, Texas, evidently waiting for a bus, intending to ride to her place of abode. About the 3rd day of October, 1945, near a road leading to Houston but in Jefferson County, Texas, the nude dead body of a young woman was found in a wooded area, the upper part of such body having been burned. That body had a zircon ring on a finger, one shoe and bobby socks. The body was later identified as that of Elnora Collins, a young single girl, weighing about 124 pounds, the child of a minister, and reared in Cleveland, Texas.

It seems that appellant left about such time in an automobile, and near Woodlawn, Louisiana, he abandoned this car and was eventually apprehended in Seattle, Washington, by two F. B. I. agents on April 10, 1947. In this abandoned automobile there were found fingerprints of the deceased, as well as those of appellant; also her social security card, a woman's brassiere, a wilted oleander, and other matters that pointed to appellant as the owner of the car and evidenced his recent presence therein, as well as that of Miss Collins.

Appellant earnestly contends that the proof shows that this young lady came to her death in Houston, Harris County, Texas, and that the venue of this cause lies wholly in Harris County.

Prior to the year 1935 and the convening of the 44th Legislature, Article 195, C. C. P., read as follows:

"If a person receives an injury in one county and dies in another by reason of such injury, the offender may be prosecuted in the county where the injury was received or where the death occurred."

Evidently that Legislature desired to amend and enlarge the scope of this article, and beginning where this old article left off, it added the phrase, "or in the county where the dead body is found." (Acts 1935, 44th Leg. p. 487, chap. 200, sec. 1.)

As contended by the State, the reason for such addition is given in the emergency clause, suggesting that the old article above quoted was not sufficiently broad and definite so that the

Legislature thought it best to add a further clause relative to the venue in murder cases. The contention of appellant that such added clause can only be applied in the event that the injury herein took place in Harris County, the death therefrom occurring in Jefferson County and the body be found in a further county, is not sound. Evidently the last amendment was intended to and did fix the venue of any homicide, either in the county where the injury occurred, where the death therefrom occurred, or where the dead body was found, and added a third place of venue to an already existing statute, which now reads as follows:

"If a person received an injury in one county and dies in another by reason of such injury, the offender may be prosecuted in the county where the injury was received or where the death occurred, or in the county where the dead body is found." (Art. 195, Vernon's Ann. Tex. C. C. P., Vol. 1, 1947 Pocket Part.)

This disposes of many of appellant's bills of exception.

It is also contended that the State's proof shows that the appellant strangled and took the life of this young girl in Harris County, and therefore, the allegation in the indictment that he took her life in Jefferson County does not correspond with such proof. The State knew of the unlawful killing of the deceased, and soon thereafter knew the identity of the person in whose car she was doubtless killed, but it had no knowledge of the circumstances of the homicide for about eighteen months thereafter upon the apprehending of appellant. The indictment herein was returned on November 14, 1945, and under Article 210, C. C. P., the State was within its rights in alleging the offense to have taken place in Jefferson County. See Stone v. State, 111 Tex. Cr. R. 547, 15 S. W. (2d) 18; Harris v. State, 141 Tex. Cr. R. 447, 149 S. W. (2d) 99. See also Art. 400 C. C. P.

Appellant's defense herein was that of insanity which, under our laws, would consist of a lack of knowledge of the right and wrong of an act, and the probable consequences of a commission thereof.

The written confession of appellant was admitted in evidence over his objection that the warning failed to show that the confession was made to the party giving the warning. The party taking the confession testified upon the trial that he gave the warning, but it is admitted that the preliminary warning shown in the confession fails to so show.

Art. 727, C. C. P., passed by the Legislature in 1907, in so far as applicable here, reads as follows:

"The confession shall not be used if, at the time it was made, the defendant was in jail or other place of confinement, nor while he is in the custody of an officer, unless * * * made in writing and signed by him (defendant); which written statement shall show that he has been warned by the person to whom the same is made," etc.

It has been held that compliance with the foregoing provision of the statute is indispensable. Robertson v. State, 54 Tex. Cr. R. 21, 111 S. W. 741; Justice v. State, 112 Tex. Cr. R. 586, 18 S. W. (2d) 667, and cases therein cited. See also Conn v. State, 140 Tex. Cr. R. 202, 143 S. W. (2d) 1036.

Because the warning required before the confession could properly be admitted in evidence was wanting, the court fell into error in admitting same.

We are then confronted with a further proposition: The confession set forth in detail the wanderings of appellant, as well as many facts immaterial to this cause, but did include, however, damaging statements relative to the death of Miss Collins, his statement as to the homicide being rather brief and concise and reads as follows:

"For what reason I do not know. I stopped the car and without any provocation or conversation I turned toward Elnora and choked her. I don't know how long I choked her, but when I let go of her, she was still. I tried to talk to her but she didn't answer. I then wanted to take her home, however, I didn't know where she lived."

He then proceeded to tell about burning her body near Beaumont on the following day and an effort to destroy her clothing, etc.

Appellant offered no defense to the homicide, and no contradictory evidence to any of the statement is shown. His sole plea was one of insanity in that he was of unsound mind with no knowledge of the right and wrong of the act nor of its probable consequences. There was proof offered relative to the unsound condition of appellant's mind by his attorneys, not only from his friends and acquaintances but also from men skilled in the science of psychiatry, chief among them being Dr. John H. Waterman, who had been educated in many colleges, universities

and institutions, as well as having enjoyed a large clientele in the practice of psychiatry. As such expert this doctor had an extensive interview with appellant for a sufficient length of time in order to conclude that he could give a well-considered opinion on the condition of appellant's mind. This doctor was placed upon the witness stand by appellant's attorneys and testified in detail relative to a lengthy interview with appellant and told many things that occurred therein. Among other things, the witness testified on direct examination as follows:

"As he (appellant) told me, after choking this girl, he had no real feeling of guilt at all. He just drove his car home, pushing the body over so nobody could see it and went upstairs and went to bed and came down the next morning and got someone to push his car to start it."

On cross-examination of Dr. Waterman, the State without objection, elicited from him, among other things, the following:

"After the strangling of the young woman to death he told me the story I got through telling. I told it once but I will repeat. After he had done this, he drove *him* to his house. He started to go upstairs and then he realized the body was sitting up and he thought he had better go push the body over so nobody would see it, and he went upstairs and went to bed, and came down the next morning and got a neighbor to help him start his car. He pushed the body over in the seat of the car to prevent somebody from seeing it. Yes, I think that was a thinking mind. I didn't gain the impression from him that he was leaving Houston. He told me he drove out to some lot. First he said he drove around kind of aimlessly. He said something about going to pay his landlord next week but he didn't say anything about telling his landlord that he was leaving for a few days. He told me he brought the young woman over in the woods in Jefferson County and there threw the body out and poured a substance on the throat to burn. He said he had a bottle of lighter fluid in the car and he put that on the throat because he thought there might be fingerprints on the neck. That's a thinking mind, I will say that."

A brief resume of the doctor's further testimony would be that appellant was a psychopathic personality, with a psychotic trend or episodes, eventuating in the statement by this doctor that the appellant was insane at the time of the commission of this alleged offense.

The State offered the witness, Dr. C. A. Dwyer, County Psy-

chiatrist for Harris County, Texas, who seemed to have had a wide and varied experience in the observation and treatment of persons along the line of psychiatry, who had observed and treated some 30,000 mental cases and who had observed appellant while being interrogated by others, as well as himself. This witness found many things in appellant's related conduct that in his opinion evidenced the fact that he knew the difference between the right and wrong of his act and its probable consequences.

There were many other lay witnesses who testified relative to their opinions as to the question of appellant's sanity, some favorable and some unfavorable to his contention.

Webster's New International Dictionary (2nd Ed.) defines "psychopathic personality" as one who is "characterized by a persistent abnormality of character and social conduct", and the word "psychotic trend" as "insane".

A further question is then presented, and that is the general doctrine that where certain testimony is erroneously admitted over proper objection but that practically the same testimony is admitted from other sources without objection, the admission of the latter testimony results in the curing of any error in the admission over objection of the first testimony above alluded to. In this instance, however, there never seemed to have been any controversy relative to the killing of Miss Collins by appellant, his only defense, save his simple plea of not guilty, being that of insanity. The facts of the killing seemed to have been freely related by him to the psychiatrists who examined him and were used by them as a basis of forming their opinion. Furthermore, appellant's own psychiatrist witness repeated, as told to him by appellant, about as much of the homicide as will be found in the written confession.

Appellant calls our attention to the fact that he did not take the stand, and then again offers us the case of Conn v. State, supra, as holding that the above rule applies only when the accused takes the witness stand and gives testimony of like character as that contained in his written statement. We think appellant is too restrictive in his application of such rule and his interpretation of the Conn case. Surely, if the accused took the stand and gave the same or similar testimony as that set forth in his written statement, then this rule invoked by the State should apply; but this one application should not thereby exclude all or any other applications thereof if same became pertinent.

Neither the cases cited in that portion of the Conn case, supra, nor the text thereof, bears out the contention that such testimony must be given in person by the accused.

In the late case of Williams v. State, 147 Tex. Cr. R. 523, 182 S. W. (2d) 715, a death penalty case, we held that an error in the improper admission of certain testimony was cured by the admission of other unobjected similar testimony. See Crossett v. State, 128 Tex. Cr. R. 272, 80 S. W. (2d) 966.

In the case of Schaefer v. State, 121 Tex. Cr. R. 220, 53 S. W. (2d) 302, all three judges of this court wrote separate opinions. Judge Hawkins wrote on the original opinion, Judge Lattimore on motion for rehearing, and Judge Morrow on the application to file a second motion for rehearing, each opinion holding and emphasizing the doctrine that "the illegal reception of testimony will be of no avail to the accused if it appear from the record that the same or similar testimony was admitted before the jury from other sources without objection, has been affirmed by this court almost from its creation," citing Stone v. State, 113 Tex. Cr. R. 371, 22 S. W. (2d) 140.

The case of Alexander v. State, 8 S. W. (2d) 176, is not thought to be in point herein. A statement made by accused while in jail to a deputy sheriff relative to the charged homicide was given to the jury over the objection of the accused. In the present case, no objection appears in the record to the testimony quoted herein as coming from the psychiatrist. Under the doctrine above quoted, we are of the opinion that the error shown in the admission of the written statement was rendered harmless by the statements related by appellant's own witness, and the unobjected to statements of the State's witness.

Bill of Exception No. 7 is based upon the fact that while the State's psychiatrist, Dr. Dwyer, was upon the stand, he testified, among other things, that "he (appellant) told me he knew the difference between right and wrong." It appears from such bill that appellant's attorney "made a whispered objection to the Court and moved that a mistrial be granted for this wholly voluntary statement to which counsel for the defendant had no opportunity to object or stop, on the grounds that said statement was inadmissible since it complied with none of the requirements specified by Article 727, Code of Criminal Procedure. However, the Court overruled defendant's motion for mistrial and instructed the jury to disregard the statement of Dr. Dwyer."

The testimony of all the psychiatrists herein was oftentimes directed to the question of appellant's knowledge of right and wrong and whether he knew that it was a punishable thing to unlawfully take a human life. One witness would detail a conversation with appellant relative to certain conditions, and assert that appellant's lack of normality arose from certain impulses of his mentality, he having an ability to know the consequences of his acts and a desire to flee therefrom. Another witness would detail certain acts, such as flight, and an attempt to destroy the body in order to eliminate any fingerprints upon the throat of the deceased. The witness would be asked if these actions, as well as others, did not evidence a knowledge of the right and wrong of the act, and, of course, he would answer in accord with his judgment, thereof. The general thought permeating all the testimony would eventually be contained in the question of whether the appellant knew it was wrong to take this young lady's life, appellant's witnesses offering the opinion that he had no such knowledge, while the State countering with the statement of its witnesses that he did know the difference between the right and wrong of this homicidal act. The State's psychiatrist voluntarily stated the words upon which this exception is based. We are not convinced of the inadmissibility of this testimony, it being but a part of a lengthy transaction unobjected to until this one statement appeared by the volition of the witness alone. See Art. 728, C. C. P. Many statements and ideas gathered from appellant's interviews were given to the jury, as well as conclusions and impressions drawn therefrom by such expert witnesses, and we see no serious error shown by this statement, especially in view of the prompt action of the trial court in instructing the jury to disregard the same. Appellant's attorneys in their argument hereunder insist that this matter was prejudicial and insidious in that at the time of the making of such statement to Dr. Dwyer, appellant "undoubtedly conceived himself able to distinguish between right and wrong, such illusion being one of the indicia of his particular type of insanity." To practically the same effect was the testimony of their scientist; and such belief, whether illusory or not, would merely add to the strength of Dr. Waterman's testimony, and according to appellant's theory, would but strengthen his plea of insanity.

Appellant complains in his Bill No. 2 because of the action of the careful trial court in permitting the following testimony to go to the jury:

"The upper part of the body from the breast up was badly decomposed and the face. The lower part of the body was still

in a pretty good state of preservation, only it was swollen. Maggots had got into the body, both in the upper part and down in the female organs. The body had on two socks and one shoe, and laying beside the body was a pair of step-ins. That's all the clothes she had on. The step-ins were laying on the side of the body. From the breast up the body was badly decomposed and had apparently been burned or something. I am not positive about what caused it but it was in a worse condition than the rest of the body. There was a kotex on the body, and there was a shoe just inside the fence and a dim trail leading from the road to where the body was, and just inside the fence was a lady's shoe laying on the ground."

The basis for the complaint is that "this detailed description of the condition of the body when found had no real relevancy to the merits of the case and its inflammatory effect is apparent, in view of the fact that the defendant's only affirmative defense was a plea of insanity." We think that the State had the right to prove that this unfortunate young lady came to her death by violence and the act of another, and should not have been relegated to a mere proof of her death, but that the details thereof, as near as could be shown, could be evidenced by her dead body as well as utilized by the jury in weighing the appellant's plea of insanity. The body, though mute, may have spoken louder than words from living witnesses.

This leaves us but one further question, and that relates to that of appellant's sanity. The law presumes all persons to be sane. Witnesses presented differed as to appellant's insanity, to prove which he had the laboring oar. The matter was sharply controverted, and his attorneys, who ably represented him herein, brought forth an array of acquaintances, kinsfolk and experts who unhesitatingly denominated him an insane person and one who did not know right from wrong nor the probable consequences of his act in thus destroying the life of this young lady. On the contrary, the State brought many witnesses, some familiar with appellant and his ways of life, as well as experts in their line, who denominated him as a sane person and was aware of the right and wrong of his act and its probable consequences. There also remained the conduct of appellant, his flight and long continued absence from the scene of the crime, as well as the evidently burned body, and an effort at its destruction. This matter has been decided by a competent jury who, regardless of the doctors' disagreement, saw fit to believe the witnesses for the State and demand of appellant the penalty of death. We cannot say that same is not warranted by the proof presented.

No error appearing, the judgment will accordingly be affirmed.

HAWKINS, Presiding Judge (concurring).

Combatting the State's contention that although the trial court was in error in admitting appellant's confession other evidence in the case renders it unnecessary to base a reversal upon such error, appellant relies chiefly upon Conn v. State, 140 Tex. Cr. R. 202, 143 S. W. (2d) 1036. As writer of the opinion in Conn's case I deem it proper to state that as a general proposition it is still my view that evidence which comes into the case from a source other than from *accused himself* confirming the truth of the confession should not obviate the necessity of reversing for error in admitting the confession. However, the facts in the present case appear to demonstrate that exceptions arise showing that evidence affirming the truth of the same facts contained in a confession does not necessarily have to come from the lips of accused testifying upon the trial. Here evidence comes from appellant's own psychiatrist witness developed by appellant's attorneys on direct examination that appellant told the witness substantially the same facts about the killing and subsequent events as shown in the confession. The statements in the confession were no more against interest than were the verbal statements made to the witness who merely repeated to the jury the things appellant told him. This information came from the same source from which the confession came. If the confession had not been in evidence the very same facts disclosed in the confession would have properly gone to the jury through admissions made by appellant to his own witness. The record shows the same admissions were made by appellant to some of the State's witnesses, and proven without objection.

The opinion in Conn v. State, (supra) should be modified in accordance with the views expressed in the original opinon of affirmance and in this concurring opinion.

### ON APPELLANT'S MOTION FOR REHEARING.

BEAUCHAMP, Judge.

In the very insistent motion for rehearing appellant again presents his argument in favor of his contention that venue in Jefferson County was not proven by the finding of the body of deceased. Such contention is not an unreasonable one in view of the language of Article 195, as it is brought forward in Vernon's Ann. C. C. P. To concur in such holding, however, would

utterly destroy the act amending Article 195 of the Code of Criminal Procedure (44th Legislature, page 487, Chapter 200, paragraph 1). Instead of clarifying the Article, as is declared to be the purpose in the emergency clause, it would be rendered more confusing and the Legislature would have done a foolish thing. It had some purpose and the emergency clause declared what that purpose is. We think the act was properly construed in the original opinion.

The other question raised in the motion for rehearing deals with the admission of appellant's written confession in evidence when such confession was not prepared as provided by statute. The reason for so doing is clearly discussed in the original opinion, as well as the concurring opinion by Judge Hawkins. This matter was considered by all members of the Court before the above opinions were announced. The motion contains the contention, however, that we have modified the holding of this Court in the case of Conn v. State, 143 S. W. (2d) 1036. It is then suggested, in oral argument, that if the holding should be modified that it not be done in the instant case.

It is the view of the writer that the holding in the Conn case is not modified by the original opinion or the concurring opinion in the instant case, but that it is given a reasonable and logical application to the facts of the case now before us. The evidence relied upon to cure the error in admitting the written confession did not come from the appellant as a witness in his own behalf, but it includes statements from his mouth brought to the jury by his own witness testifying in the case. Evidence thus presented should have the same force and effect as if the jury heard him make the statement from the witness box. Any other conclusion would be an unreasonable application of the rule as interpreted in the Conn case.

We have again considered the entire record and are of the opinion that the case was properly affirmed.

Appellant's motion for rehearing is overruled.