28 N.J. Super. 374 (1953)
100 A.2d 772
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
THOMAS J. O'SHEA, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 9, 1953.
Decided November 20, 1953.
*376 Before Judges CLAPP, GOLDMANN and EWART.
Mr. Paul T. Huckin argued the cause for the State (Mr. Harry L. Towe, attorney).
Mr. James A. Major argued the cause for the defendant (Mr. Joseph H. Gaudielle, attorney).
The opinion of the court was delivered by CLAPP, S.J.A.D.
Defendant appeals from a conviction of bookmaking, raising three issues.
First, it is urged, the trial court erred in denying defendant's motion for a judgment of acquittal made at the close of the State's case, as, at that stage of the case, no sufficient proof of bookmaking had been adduced.
The defendant was charged with having made book on July 23, 1951. That morning he was in a gasoline station in Hackensack, N.J. When he left, police officers, who had the place under surveillance because of a complaint, followed *377 him, stopping him. They told him he would have to go to headquarters with them for questioning, adding (so defendant's counsel said, while arguing the motion) that he was being taken there "on suspicion of bookmaking." This reference to bookmaking may be disregarded; there was no proof in the State's case that the defendant was so told.
When told to come to headquarters, defendant placed in his mouth, and tried to chew up and swallow, five slips of paper, but the officers forced them out of his mouth. The slips proved to be notations of bets. Two of the slips had to do with horses running at Monmouth Park, New Jersey, that very afternoon. A third slip was a brief record of accounts of various betters.
At the time, the defendant had with him, in addition to these betting slips, two scratch sheets dated July 23, 1951, called the "National Racing Program," stating the horses running at various tracks and other racing information; a pamphlet "Joe and Asbestos Sports Weekly," dated July 23, 1951, containing sport news; a pad of white paper, a pencil, $156.37 in cash and two checks totalling $260.
Defendant argues that possession of betting slips is not a crime under our law. However the possession by the defendant of the betting slips, scratch sheets and the other paraphernalia mentioned here, gives rise, under the circumstances, to an inference that he was engaged in bookmaking. State v. Rabatin, 25 N.J. Super. 24 (App. Div. 1953); State v. Martinek, 12 N.J. Super. 320 (App. Div. 1951); cf. State v. O'Donnell, 8 N.J. Super. 13 (App. Div. 1950). The attempt to swallow the slips strengthens the inference. 2 Wigmore on Evidence (3d ed.), sec. 278; State v. De Falco, 8 N.J. Super. 295 (App. Div. 1950). Bookmaking comprises two operations, the taking of a bet from a better and the writing of it down. State v. Morano, 134 N.J.L. 295 (E. & A. 1946). Defendant's possession of the slips and other paraphernalia, under the circumstances here, connects him with them sufficiently to open up an inference that he wrote up the slips recording the bets, and himself took these bets from the better or betters.
*378 A motion for acquittal is properly denied, if there is any evidence from which an inference of guilt can be drawn. State v. Picciotti, 12 N.J. 205 (1953). On defendant's behalf it is claimed that a different standard applies to a case based on circumstantial evidence. In such a case, it is claimed, the jury must find that the circumstances "exclude to a moral certainty every other hypothesis but the single one of guilt"; and indeed this is the jury's obligation when the case is sent to it. State v. Donohue, 2 N.J. 381 (1949). However, this does not mean that a motion for acquittal must be granted by the court where, as here, the evidence is such that the jury may properly draw an inference of either guilt or innocence.
The second issue raised by defendant  also on his motion for acquittal  is that there was no sufficient proof of venue at the close of the State's case. It may be said that at that point of the trial the proofs were inadequate in this respect. However, the testimony adduced on defendant's case (which we have examined) as to his activities the morning of July 23, 1951 in Hackensack raises inferences sufficient to supply this deficiency. It is true that to find from his testimony an inference as to venue, one would have to accept part of his story and reject the rest, but this, under the circumstances, was entirely reasonable.
It has been held in this court that where the proofs are insufficient to make out a case for the jury at the close of the State's case, a denial of a motion for acquittal, then made, is reversible error even though later in the case sufficient evidence is brought in. State v. Fox, 12 N.J. Super. 132 (App. Div. 1951); cf. State v. Goodman, 9 N.J. 569 (1952). But, to the contrary, see the former practice on a strict writ of error, State v. Keegan, 105 N.J.L. 159 (E. & A. 1928)  the case distinguishes the procedure under N.J.S.A. 2:196-16 which is no longer law; see, too, the practice in other states, 23 C.J.S., Criminal Law, § 1148, page 677; 16 C.J. 938; 17 A.L.R. 925; U.S. v. Goldstein, 168 F.2d 666 (C.C.A. 2 1948). We have no occasion here to consider the rule except with respect to the matter of *379 venue. The rule is grounded in a desire to prevent the defendant from coming "perilously near" to incriminating himself by supplying deficiencies in the State's case. State v. Fox, supra.
Venue, though it must be proved by the State, State v. Brooks, 136 N.J.L. 577 (E. & A. 1947), is not an element of a crime. Wilson v. State, 62 Ark. 497, 36 S.W. 842 (Sup. Ct. 1896); People v. West, 34 Cal. App.2d 55, 93 P.2d 153 (Dist. Ct. App. 1939); People v. McIntosh, 242 Ill. 602, 90 N.E. 180 (Sup. Ct. 1909); Hengstler v. State, 207 Ind. 28, 189 N.E. 623 (Sup. Ct. 1934); Literal v. Commonwealth, 250 Ky. 565, 63 S.W.2d 587 (Ct. App. 1933); State v. Williams, 122 Mont. 279, 202 P.2d 245 (Sup. Ct. 1949); People v. Hetenyi, 304 N.Y. 80, 106 N.E.2d 20 (Ct. App. 1952); State v. Kozukonis, 71 R.I. 456, 46 A.2d 865 (Sup. Ct. 1946); Norris v. State, 127 Tenn. 437, 155 S.W. 165 (Sup. Ct. 1913). The tendency of the law, at any event in those jurisdictions not tied down by constitutional or statutory limitations, Blume, The Place of Trial of Criminal Cases, 43 Mich. L. Rev. 59 (1944), is not to allow technical questions of venue to be made a refuge for the guilty. Cf. the new rule, R.R. 3:6-1 (b). Chief Justice Beasley, in the course of his remarks in State v. Le Blanch, 31 N.J.L. 82 (Sup. Ct. 1864), speaks of a "mere question of venue  a matter so pliant that it would expand under the slight pressure of convenience."
In our State, where indictments are returnable in the Superior Court, R.R. 3:3-8, jurisdiction and venue are to be distinguished. Venue in the Superior Court relates to that territorial area within the State, where the case is to be prosecuted. So regarded, a question as to venue in the Superior Court is a mere matter of practice and procedure. British So. Africa Co. v. Companhia [1893] A.C. 602, 630 (House of Lords); Paige v. Sinclair, 237 Mass. 482, 130 N.E. 177 (Sup. Jud. Ct. 1921); cf. State v. Collins, 2 N.J. 406 (1949). The County Court, though its jurisdiction may be only county-wide, takes cognizance of *380 the cause merely pursuant to a revocable assignment from the Superior Court. R.R. 3:4-1.
The rule of State v. Fox, supra, seems to be founded upon the privilege against self incrimination. What basis is there for extending that privilege to a matter which is no part of the crime, but merely an affair of practice and procedure or at most (while the cause is in the County Court's hands) merely a matter of a jurisdictional nature? See 8 Wigmore on Evidence (3rd ed.), §§ 2251, 2260, 2261. Why should a person escape a just conviction solely because he, and not the State, has completed the proof as to a matter such as this? We think the rule of State v. Fox, supra, should be held not to apply to a question of venue. In this respect, we find ourselves not in accord with State v. Bacheller, 89 N.J.L. 433 (Sup. Ct. 1916).
Defendant's third point has to do with the trial court's charge. It is urged that the jury "were not told that if the evidence was as consistent with innocence as with guilt that they should acquit," and that there is nothing in the charge directing "the jury to consider the question of whether the alleged offense took place in Bergen County or elsewhere." On the contrary, we think these matters are to be found in the charge. At any event, there were no requests to charge and no objection was made to the charge given. State v. Auld, 2 N.J. 426 (1949); R.R. 3:7-7 (b).
We see no plain errors, nor any indication that the defendant has not been given a fair trial.
Affirmed.