JOSEPH MILES WALKER, Appellant, v.
THE STATE OF NEVADA, Respondent.

No. 4476

November 19, 1962                    376 P.2d 137

[Rehearing denied December 11, 1962]

*John Squire Drendel*, of Reno, for Appellant.

*Charles E. Springer*, Attorney General, and *William J. Raggio*, District Attorney, Washoe County, for Respondent.

## OPINION

By the Court, McNamee, J.:

Appeal is from the judgment based upon a jury verdict finding the appellant guilty of murder in the first degree and fixing the penalty at death. Appellant also appeals from the order denying a new trial.

On September 19, 1960, while one Paul Allison was driving a pickup truck outfitted with a camper on the

rear through Elko, Nevada, he picked up appellant who was hitchhiking. They stopped at Carlin, Nevada, and purchased some food and a fifth of gin. Thereafter, they stopped at Lovelock, Pershing County, for some gasoline. They then drove three or four miles west of Lovelock where they parked for a time and then drove back into Lovelock to purchase more liquor. Thereafter, they drove "quite a way, eight or nine miles, maybe ten," beyond where they had first parked. According to the testimony of appellant, when he and Allison stopped the second time they continued drinking, and a fight ensued during which Allison was stabbed. Allison was found dead in the pickup camper in a parking lot in Reno, Washoe County, Nevada, on September 24, 1960. Appellant was apprehended several months later in Oklahoma where he was in prison.

Appellant specifies nine errors:

1. In his opening remarks to the jury the district attorney, over the objection of appellant, was permitted to state that appellant was apprehended at the Oklahoma State Penitentiary in McAlester, Oklahoma.

This statement was improper because it connotes the commission of an offense by appellant other than the one for which he was being tried. The objection, therefore, should have been sustained. State v. Lindsay, 63 Nev. 40, 161 P.2d 351.

The appellant, however, was not prejudiced by this opening remark because the place of apprehension was contained in appellant's written confession and mentioned by him in his oral testimony.

2. During the direct examination of prosecution witness Gladden, the district attorney asked: "Now, based on your experience as a deputy warden at the Oklahoma State Penitentiary, and your some eight years' experience altogether at the prison, and based on your close contact with the inmate personnel, can you state the incidence of homosexuality with the inmate population?"

Appellant's counsel objected to the question and moved that it be stricken from the record.

The district attorney maintained that the question was relevant to motive, saying: "One of the theories of the State's case will be that, in addition to robbery, this was a homicide in the perpetration of a homosexual act." However, when questioned by the court, he admitted that he did not intend to show that Gladden had any knowledge of the appellant in this respect.

The district attorney erred in asking the question, but no intentional misconduct appears as would justify a reversal on that ground. People v. Doetschman, 69 Cal.App.2d 486, 159 P.2d 418.

The court sustained the objection and stated to the jury: "The Court instructs you that under all the facts and circumstances of this case, and the state of the evidence to date, this is an improper question. The Court has sustained an objection to it. I ask you to completely disregard it, wipe it out of your minds, and let it have no more effect upon you than if this question had never been asked."

Appellant did not move for a mistrial. As heretofore stated, he objected to the question and moved that it be stricken. The court's action was in exact compliance with appellant's request and, consequently, he cannot complain of the court's ruling in this regard. In view of appellant's admissions that he committed the homicide in question, we are of the opinion that the mere asking of the question did not affect any substantial right of the appellant or prevent him from having a fair and impartial trial.

3. The district attorney asked appellant on cross-examination: "Is it a matter of fact that you were dishonorably discharged from the Army?"

On direct examination, appellant had testified that he had used another name when he re-enlisted in the Army and stated he did not know of any reason why he had done so.

Clearly, on cross-examination, this question was proper as being relevant to impeachment. The court,

however, sustained appellant's objection to the question, and no prejudice to appellant therefore resulted.

4. Nevada Wise, a Reno police officer, who on September 24, 1960, spent two hours examining the pickup camper, its contents, and the body of the victim, testified on cross-examination that he had made a written report of this investigation. Appellant thereupon made a motion to produce the written report so that he could further cross-examine the witness. This motion was denied. We are of the opinion that the trial judge should have granted the motion to produce. State v. Bachman, 41 Nev. 197, 168 P. 733; People v. Rosario, 9 N.Y.2d 286, 213 N.Y.S.2d 448, 173 N.E.2d 881. Its refusal to do so is not reversible error if no substantial right of the appellant was prejudiced by the trial court's erroneous ruling. NRS 169.110.

Wise testified on direct examination that he had gone to the pickup camper to photograph the scene and to process it for latent fingerprints, and that he took photographs of the exterior and interior of the camper. Some of these photographs were received in evidence after Wise had testified that they correctly and accurately portrayed that which they purported to portray. Wise also identified certain articles received in evidence which appeared in the photographs. This testimony was corroborated by Officers Williams and Manin who were present while Wise was making the investigation and taking the photographs. The photographs depicted a stab wound in decedent's back, the tied hands, and blankets and other articles covering the body.

Appellant in his written confession admitted stabbing and tying the hands of the victim and later covering the body. At the trial he testified that the confession as given was accurately transcribed except for certain discrepancies which he pointed out and described as being very minor.

Under these circumstances we cannot conceive how Wise's testimony could have been materially impeached

by his written statement, or how the failure to furnish appellant the statement was in any way prejudicial.

5–7. The information alleges that the offense took place in Washoe County, Nevada. There was evidence from which the jury properly could have found that this allegation was true. The body, the fatal weapon, and the vehicle in which the homicide took place were all found in Reno, Washoe County. Also, appellant pawned deceased's jewelry therein. The only evidence to the contrary was appellant's written confession from which it could be inferred that the homicide took place near Lovelock in Pershing County. This was partially supported by the testimony of witness Bone that she rented a motel room on September 19, 1960, in Fernley, Lyon County, to a single man, and that the automobile license number on the guest registration card was that of the deceased's vehicle.[1]

At the conclusion of the state's evidence, appellant moved for an acquittal on the grounds that the court's jurisdiction had not been proven or, in the alternative, that the court cede jurisdiction to Pershing County. Appellant claims error in the denial of this motion and error in the giving of Instruction 25.

The prosecution's theory was that the homicide took place just outside Lovelock, Nevada, and Instruction 25 reads:

"When an offense is committed in this state in a car prosecuting its trip, the jurisdiction is in any county through which the car passes in the course of its trip, or in the county where the trip terminated. You are instructed that the vehicle described in this case * * * is a 'car' within the meaning of this instruction."

NRS 171.040 provides in part as follows: "When an offense is committed in this state: * * * 2. On a railroad train, car, stage or other public conveyance, prosecuting its trip, the jurisdiction is in any county through which the train, car, stage or other public conveyance passes in the course of its trip, or in the county where the trip terminates."

---

[1] In traveling by highway from Lovelock to Reno a motorist passes through Churchill and Lyon Counties.

In order to justify the giving of Instruction 25 we must construe the word "car" appearing in the statute to include in its meaning a private motor vehicle.

It is respondent's contention that because of the punctuation in the statute, the words "or other public conveyance" must be read in conjunction with the preceding word "stage," and that they do not refer back to a railroad train or car. It is clear to us, however, that the word "car," as used therein, was not intended to include a private motor vehicle.

NRS 171.040 was taken from Section 783 of the California Penal Code in 1911. Subsequent to 1911, the California Legislature amended their statute by making it applicable to a public offense committed in that state on a motor vehicle prosecuting its trip through the state. Cal.Pen.Code, sec. 783. Nevada has enacted no such amendment.

We conclude, therefore, that the giving of Instruction 25 was error because subsection 2 of NRS 171.040 relates only to public conveyances, and that the word "car," as used therein, does not include a private motor vehicle. It becomes necessary, therefore, to determine whether this error was prejudicial.

It is apparent that before the filing of the information the district attorney did not have proof of such nature as to permit him to know where the homicide took place. The accused's statement, if accepted as true, could place the homicide in Pershing, Churchill, or Lyon County. On the other hand, from the evidence presented, it could be inferred that the homicide took place in Washoe County. If the state had sent the case to Pershing County, as requested by appellant, the same objection to a trial therein could have been raised by the appellant. No one can say with certainty where the killing took place. Under these circumstances, some states by statute permit the venue to lie where the dead body was found or where the injury occurred. McCaine v. State, 152 Tex.Cr. 108, 211 S.W.2d 190. Nevada has no such statute.

Some courts hold that where it cannot be determined

with certainty in which county the death occurred there would be no bar to prosecution for murder in the county where the kidnaping took place under a statute identical with NRS 171.030.[2] State v. Wilson, 38 Wash.2d 593, 231 P.2d 288.

In support of his motion that jurisdiction be ceded to Pershing County, appellant cited NRS 200.110, subsection 1 of which provides: "If the injury be inflicted in one county, and the party die within another county, or without the state, the accused shall be tried in the county where the act was done, or the cause of death administered."

With the uncertainty existing in this case, resulting from the finding of the body in Washoe County as well as the pawning of the victim's jewelry therein, the jury could have determined that the homicide took place in Washoe County as alleged. Even if it determined that the acts resulting in the death were committed in part in one county, and in part in another, or in two or more counties, of which Washoe County was one, then, under NRS 171.030, venue was properly laid in Washoe County. The killing was admittedly committed by appellant, and "the acts or effects thereof constituting or requisite to the consummation of the offense" could have occurred in two or more counties, one of which was Washoe County.

Under the present state of our statutory law, with the evidence which developed in this case known to the prosecuting attorney at the time the information was filed, it would have been impossible for him to allege with any degree of certainty that the offense took place in any specific county, and he would be faced with the same dilemma if the judgment is reversed and the case remanded for a new trial.[3]

In State v. O'Shea, 28 N.J.Super. 374, 100 A.2d 772, 774, the court after holding that venue, although it

[2]"When a public offense is committed in part in one county and in part in another or the acts or effects thereof constituting or requisite to the consummation of the offense occur in two or more counties, the jurisdiction is in either county."

[3]It is evident that our statutes should be clarified in this respect.

must be proved by the state, is not an element of a crime, went on to say: "The tendency of the law, at any event in those jurisdictions not tied down by constitutional or statutory limitations, Blume, The Place of Trial of Criminal Cases, 43 Mich.L.Rev. 59 (1944), is not to allow technical questions of venue to be made a refuge for the guilty. Cf. the new rule, R.R. 3:6–1(b). Chief Justice Beasley, in the course of his remarks in State v. Le Blanch, 31 N.J.L. 82 (Sup.Ct. 1864), speaks of a 'mere question of venue—a matter so pliant that it would expand under the slight pressure of convenience.' "

We conclude, therefore, that venue could properly be laid in Washoe County. See People v. Fellows, 63 Cal.App. 557, 219 P. 80.

In this state, where indictments are returnable in the district court, jurisdiction and venue are to be distinguished.

There is no question concerning the jurisdiction of the Washoe County court. Nev. Const. art. 6, sec. 6, gives the district courts in the several judicial districts in this state jurisdiction in all criminal cases not otherwise provided by law.

The accused did not have a constitutional right to be tried in any particular county and, under the circumstances of this case, no such right was conferred upon him by statute. He did have the right, under NRS 174.410, to have a change of venue on the ground that a fair and impartial trial could not be had in Washoe County, but no such application for removal was made and no contention is made that the jury selected in Washoe County was improperly constituted, erroneously impaneled, or that they were not fair and impartial.

We therefore conclude that the giving of this improper instruction pertaining to venue did not constitute a miscarriage of justice and did not deprive appellant of any constitutional or statutory right, it

appearing with no evidence to the contrary that the crime was committed in Nevada.

8. The lower court instructed the jury that if the homicide took place in the perpetration of or attempt to perpetrate robbery or burglary it would be murder in the first degree. Appellant contends this was error because the state failed to prove the essentials of any such felony. The contention is without merit. There was ample evidence which would warrant the finding that the killing took place while appellant was engaged in the act of robbery, or in the attempt to rob. In either event the act would constitute a murder in the perpetration of robbery as specified in NRS 200.030. State v. Fouquette, 67 Nev. 505, 221 P.2d 404.

9. Appellant's last claim of error is that the confession taken while appellant was a prisoner in the Oklahoma State Penitentiary was not given voluntarily.

Evidence was given that appellant did not ask for counsel when he gave his confession, and this was not denied by appellant. From the evidence, supported by appellant's own oral testimony, the trial court properly determined that the confession was voluntary. The mere fact that the appellant was under restraint at the time the confession was given does not in itself make the confession involuntary. Ex parte Sefton, 73 Nev. 2, 306 P.2d 771. The trial court even deleted therefrom, outside the presence of the jury, certain evidence of other independent and unconnected crimes.

This court is most reluctant to disregard error as harmless under NRS 169.110, particularly in a capital case. See Rainsberger v. State, 76 Nev. 158, 350 P.2d 995. However, in the present case, in view of the overwhelming proof of guilt, we are convinced that the jury would not have come to a different conclusion, either as to the verdict of guilty or as to the penalty fixed, even if the errors which we recognize had not been committed. State v. Skaug, 63 Nev. 59, 161 P.2d 708, 163 P.2d 130; cf. Garner v. State, 78 Nev. 366, 374

P.2d 525. In other words, it may not be said that any substantial right of appellant was prejudiced by the court's erroneous rulings.

Affirmed.

BADT, C. J., concurs.

THOMPSON, J., dissenting:

I dissent. This court is again faced with the difficult task of deciding, upon a cold record, whether errors committed during the jury trial of a capital case are to be deemed harmless or prejudicial. Such a decision is one concerning which judges frequently differ. I agree with the majority opinion that the record reveals the commission of three errors by the trial court and, in addition, one instance of prosecutor misconduct. However, I am unable to conclude, as did they, that such accumulation of error occurred without prejudice to the defendant's right to a fair trial.

1. *The prosecutor's opening remark.* It is important to remember that in a criminal case the accused need not testify. Const. of Nev., art. 1, sec. 8; NRS 175.175. In the instant case the sole living witness to the homicide was the defendant. Only he could communicate to others the circumstances surrounding the killing. Whether he would elect to testify at the trial was a decision to be made by him *after* presentation of the state's case in chief. He could not be compelled to tell his story of the occurrence. In the case at bar, Walker's decision to take the stand may well have been influenced by the prosecutor's opening statement remark, permitted over objection, that he, Walker, was apprehended at the Oklahoma State Penitentiary. Though not a direct statement to the jury of his status as a convict, the implication was clear and had the tendency to connect him with the commission of a separate, distinct and independent crime.[1] In State v. Lindsay, 63

---

[1] The state sought to justify the remark, contending that the defendant's apprehension at the Oklahoma prison, and all circumstances surrounding same, formed a part of the res gestae of the arrest and could be shown where relevant to the issues, citing Fricke, California Criminal Evidence, 285 (5th ed. 1960). This contention is without merit. The so-called "apprehension" was not an

Nev. 40, 161 P.2d 351, where a witness was asked whether he and the defendant did time together in Walla Walla, Washington, this court held the question to be misconduct and error, because it tended to connect accused with the commission of a crime independent of and unconnected with the one with which he was on trial. Such error, however, was not deemed prejudicial under the circumstances of that case. See also Garner v. State, 78 Nev. 366, 374 P.2d 525.

Thus, during the *initial stage* of the trial, the jury was indirectly advised of Walker's status as a convict. Perchance, Walker's pre-trial strategy was to remain silent, thereby precluding jury knowledge of his crime record. If so, such pre-trial decision may have been changed because of the prosecutor's opening remark. Trial plans are frequently altered by such a circumstance. In any event, Walker decided to testify. Because of that decision the jury learned, among other things, that he was a "five-time loser," having been previously convicted of five felonies. Whether his election to be a witness was in fact influenced by the prosecutor's opening remark is not known to us. However, I am unable to cast from my thoughts this question: Would either the verdict or the sentence have been different had such remark not been made, had Walker elected to remain silent, and had the jury not become aware of his extensive crime record?[2] I deem such question appropriate when called upon to decide whether prejudice resulted to a substantial right of one accused of crime. Accordingly, I prefer not to speculate that the trial result would have been the same, particularly in a capital case where the sentence of death has been pronounced.

arrest: it was simply a conference at which the prosecutor questioned Walker regarding the Nevada homicide, and received his answers, the entire proceeding being reported and transcribed. In any event, the circumstance of Walker's imprisonment was not relevant to any issue in his Nevada murder trial.

[2]Specific reference to Walker's criminal record was deleted from the confession which was introduced during the state's case in chief, in accordance with the rule in State v. Skaug, 63 Nev. 59, 161 P.2d 708, 163 P.2d 130.

2. *The prosecutor's question re incidence of homosexuality.* During presentation of the state's case in chief, the deputy warden of the Oklahoma prison was asked: "Now, based on your experience as a deputy warden at the Oklahoma State Penitentiary, and your some eight years experience altogether at the prison, and based on your close contact with the inmate personnel, can you state the incidence of homosexuality with the inmate population?" During argument upon the objection interposed by defense counsel, the *prosecutor admitted that he could not connect the subject of homosexuality with the defendant.* In view of such concession, I believe the mere asking of such question to be misconduct. The majority, though conceding that the prosecutor erred in asking the question, appears to believe it to have been unintended error, committed in the exercise of good faith. I am unable to reach the same conclusion. Had the prosecutor believed that the subject of homosexuality was relevant to the case *and* that evidence was available to establish the defendant's affliction in that regard, my opinion would be otherwise. However, with the information that such evidence was not available and could not be offered, I deem the question grossly improper.

Though the trial court sustained the objection and instructed the jury to disregard the question, the possible prejudice resulting from the fact that it was asked and overheard by the jurors, was not, in my judgment, thereby eliminated. Not every error is cured by a correct ruling and admonition. In State v. Teeter, 65 Nev. 584, 200 P.2d 657, this court reversed a second degree murder conviction notwithstanding a correct ruling and admonition, simply because the subject matter sought to be introduced (another offense) and talked about before the jury, was *inherently prejudicial.* The same reasoning has application here.

Finally, the defendant's decision to testify may have been influenced by this circumstance, as well as by the subject previously discussed. We do not know. It is sufficient to note that upon conclusion of the state's direct case, the jury may well have considered Walker

to be a convict and, perchance, a homosexual. It should not have been permitted the opportunity, at that stage of the trial, to surmise regarding such inherently prejudicial matter.

Thus, it is apparent that Walker's status as a convict was proper ammunition only by way of impeachment should he testify. It is equally apparent that the incidence of homosexuality among the inmates at the Oklahoma prison was not pertinent to the case at any stage of the trial. Yet, the first was indirectly mentioned before any testimony was offered, and the second referred to during the prosecution's direct case, perhaps upon the premise that "guilt by association" might be of assistance in obtaining a conviction. I do not find such occurrences compatible with the concept of a fair trial.

3. *The written report of the witness Wise.* Though not a crucial witness, Officer Wise of the Reno Police Department was an important witness to the state's direct case. He investigated the scene of the homicide. He photographed the interior of the camper and its contents, the position of the victim therein, processed for fingerprints and, during trial, related his activities and observations, identifying many items which were received in evidence. During cross-examination by defense counsel it developed that Officer Wise had, before trial, made a written report of his investigation. The defense motion to produce such report was denied. This ruling is assigned as error.

Our nation's highest court in Jencks v. United States, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103, considered the matter of discovery *during trial.*[3] In Jencks, crucial testimony against the defendant, charged with filing an affidavit stating falsely that he was not a member of the communist party, was given by two undercover agents of the Federal Bureau of Investigation. They stated on cross-examination that they had

---

[3]Discovery during trial is to be distinguished from the pre-trial discovery problem presented in Pinana v. District Court, 75 Nev. 74, 334 P.2d 843, and Pinana v. State, 76 Nev. 274, 352 P.2d 824. An excellent article re all aspects of criminal discovery appears in 49 Calif.L.Rev. 56.

made regular oral and written reports to the FBI on the subjects of their direct testimony. Defendant moved for production of these reports for inspection by the judge, with a view to their use by defendant for impeachment purposes. The motion was denied. The defendant was convicted. His conviction, affirmed by the Court of Appeals, was reversed by the Supreme Court. The court held that the defendant was entitled to examine the reports without—as some previous cases had required—a preliminary showing of inconsistency between the reports and the agent's testimony, or a preliminary in camera inspection of the reports by the judge to determine relevancy.[4] Though the rule announced in Jencks appears, at this time, to be a rule of procedure and not binding on state courts, it is most persuasive. Indeed, this court, long before Jencks, adopted a similar view. See State v. Bachman, 41 Nev. 197, 168 P. 733.

My colleagues agree that error occurred when the trial court denied the defendant's motion to produce, but label such error harmless. I cannot concur. The information requisite to such a determination is not contained in the record on appeal. Cf. People v. Rosario, 9 N.Y.2d 286, 213 N.Y.S.2d 448, 173 N.E.2d 881, cited by the majority opinion. The written report of Officer Wise was not marked for identification. We do not know whether it was valuable for impeaching purposes; whether it was inconsistent with or in contradiction of his oral trial testimony. Neither can we ascertain whether the written report contained information omitted from his trial testimony, or the contrary. Cf. People v. Chapman, 52 Cal.2d 95, 338 P.2d 428. The uses which experienced trial counsel would have made of such report, had it been produced, are conjectural. Absent such information, a void exists, causing the choice between the harmless or prejudicial nature of the error to be patent guesswork. In such a situation I choose to *presume* prejudice.

---

[4]Because of the Jencks opinion, Congress passed the "Jencks Act," 18 U.S.C., sec. 3500. Thus, this subject, for the purposes of federal court trials, is now governed by statute. Annot., 5 L.Ed.2d 1014.

Thus, the accumulation of error is apparent.[5] The improper reference to the accused's status as a convict and, by inference, his possible participation in homosexual activity as an inmate of the Oklahoma prison, despite the trial court's admonition, have the inherent tendency to prejudice. The effect of the failure, during trial, to produce the statement of an important witness for defense use in cross-examination, is unknowable. The accused was tried, found guilty, and sentenced to death. These factors compel me to believe that Walker should be accorded a new trial, free from the errors herein described. Cf. Garner v. State, 78 Nev. 366, 374 P.2d 525.

[5] I agree with the majority that the cause is triable in Washoe County because of the uncertainty as to the exact locale of the homicide. Hence, the erroneous giving of Instruction No. 25 regarding the "in transitu" statute should not be deemed prejudicial.